## IN THE UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF TEXAS,
### AUSTIN DIVISION

| | | |
|---|---|---|
| **EDWARD RANDOLPH TURNBULL IV,** | § | |
| *Plaintiff*, | § | |
| | § | |
| | § | |
| **v.** | § | |
| | § | |
| **COMMISSION FOR LAWYER DISCIPLINE; THE OFFICE OF THE CHIEF DISCIPLINARY COUNSEL; SEANA WILLING, in her Official Capacity as Chief Disciplinary Counsel of the State Bar of Texas; AMANDA M. KATES, in her Official Capacity as Assistant Disciplinary Counsel for the Office of the Chief Disciplinary Counsel; JOHN S. BRANNON, in his official capacity as Assistant Disciplinary Counsel for the Office of the Chief Disciplinary Counsel; TIMOTHY J. BALDWIN, in his official capacity as Administrative Attorney for the Office of the Chief Disciplinary Counsel; DANIEL MARTINEZ, in his official capacity as Assistant Disciplinary Counsel for the Office of the Chief Disciplinary Counsel; D. Grosz , in her official capacity as Assistant Disciplinary Counsel for the Office of the Chief Disciplinary Counsel; Jenny Hodgkins, in her official capacity as the Executive Director & General Counsel with the Board of Disciplinary Appeals; Laura Gibson, Cindy V. Tisdale, Sylvia Borunda Firth, Benny Agosto, Jr., David N. Calvillo, Elizabeth Sandoval Cantu, Luis Cavazos, Craig Cherry, Jason Charbonnet, Kelly-Ann F. Clarke, Jeff Cochran, David C. Courreges, Thomas A. Crosley, Steve Fischer, Lucy Forbes, Gregory M. Fuller, August W. Harris III, Matthew J. Hill, Forrest L. Huddleston, Lori M. Kern, Modinat Kotun, Bill Kroger, Dwight McDonald, Carra Miller, Lawrence Morales II, Lydia Elizondo** | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | **CASE NO. 1:23-cv-00314**<br><br>**JURY TRIAL DEMANDED** |

| | |
|---|---|
| **Mount, Kimberly M. Naylor, Jeanine** | § |
| **Novosad Rispoli, Michael J. Ritter, Audie** | § |
| **Sciumbato, Mary L. Scott, John Sloan, D.** | § |
| **Todd Smith, G. David Smith, Paul K.** | § |
| **Stafford, Alex J. Stelly Jr., Nitin Sud,** | § |
| **Radha Thiagarajan, Robert L. Tobey,** | § |
| **Aaron Z. Tobin, Andrew Tolchin, G.** | § |
| **Michael Vasquez, Kimberly Pack Wilson,** | § |
| **and Kennon L. Wooten in their official** | § |
| **capacities as Members of the Board of** | § |
| **Directors of the State Bar of Texas,** | § |
| ***Defendants*.** | § |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF WESTERN DISTRICT OF TEXAS:

COMES NOW, Plaintiff, Edward Randolph Turnbull IV ("Mr. Turnbull" or "Plaintiff"), and files this Original Complaint complaining of the Board of Directors of the State Bar of Texas ("SBOT"); the Commission for Lawyer Discipline (the "CFLD"); the Office of the Chief Disciplinary Counsel (the "CDC"); Seana Willing, in her official capacity as the Chief Disciplinary Counsel of the State Bar of Texas; Amanda M. Kates, in her official capacity as the Assistant Disciplinary Counsel for the CDC; John S. Brannon, in his official capacity as the Assistant Disciplinary Counsel for the CDC; Timothy J. Baldwin, in his official capacity as the Administrative Attorney for the Office of the CDC; Daniel Martinez, in his official capacity as the Assistant Disciplinary Counsel for the Office of the CDC; D. Grosz , in her official capacity as the Assistant Disciplinary Counsel for the Office of the CDC; Jenny Hodgkins, in her official capacity as the Executive Director & General Counsel with the Board of Disciplinary Appeals (collectively, the "Defendants"). In support thereof, Mr. Turnbull would respectfully show the Court as follows:

**I.**

**PARTIES**

1.      Plaintiff Edward Randolph Turnbull IV is an individual who resides in Harris County, Texas. Mr. Turnbull is the owner and founder of Turnbull Legal Group, PLLC ("TLG").

2.      Defendant the Board of Directors of the State Bar of Texas is an agency of the State of Texas. The SBOT may be served with summons in this matter by serving Ross Fischer, General Counsel for the SBOT, at 1414 Colorado St., Austin, Texas 78701, or wherever he may be found.

3.      Defendant the Commission for Lawyer Discipline is a standing committee of the State Bar of Texas. The CFLD may be served with summons in this matter by serving Roberto Ramirez, Chair of the Commission for Lawyer Discipline, at 1414 Colorado St., Austin, Texas 78701, or wherever he may be found.

4.      Defendant the Office of the Chief Disciplinary Counsel is a standing committee of the State Bar of Texas. The CDC may be served with summons in this matter by serving Seana Willing at 1414 Colorado St., Austin, Texas 78701, or wherever she may be found.

5.      Defendant Seana Willing, in her official capacity as the Chief Disciplinary Counsel for the State Bar of Texas, is an individual who resides in Travis County, Texas. She may be served in her official capacity with summons in this matter at 1414 Colorado St., Suite 200, Austin, Texas 78701, or wherever she may be found.

6.      Defendant Amanda M. Kates, in her official capacity as the Assistant Disciplinary Counsel for the Office of the CDC, is an individual who resides in Travis County, Texas. She may be served in her official capacity with summons in this matter at 1414 Colorado St., Austin, Texas 78701, or wherever she may be found.

7.      Defendant John S. Brannon, in his official capacity as the Assistant Disciplinary Counsel for the Office of the CDC, is an individual who resides in Harris County, Texas. He may

be served in his official capacity with summons in this matter at 4801 Woodway Drive, Houston, Texas 77056, or wherever he may be found.

8.    Defendant Timothy J. Baldwin, in his official capacity as the Administrative Attorney for the Office of the CDC, is an individual who resides in Harris County, Texas. He may be served in his official capacity with summons in this matter at 4801 Woodway Drive, Suite 315-W, Houston, Texas 77056, or wherever he may be found.

9.    Defendant Daniel Martinez, in his official capacity as the Assistant Disciplinary Counsel for the Office of the CDC, is an individual who resides in Bexar County, Texas. He may be served in his official capacity with summons in this matter at 1414 Colorado St., Austin, Texas 78701, or wherever he may be found.

10.    Defendant Daniela Grosz, in her official capacity as the Assistant Disciplinary Counsel for the Office of the CDC, is an individual who resides in Travis County, Texas. She may be served in her official capacity with summons in this matter at 6533 E. Hill Dr., Apt 19, Austin, TX 78731-4338, or wherever she may be found.

11.    Defendant Jenny Hodgkins, in her official capacity as the Executive Director & General Counsel with the Board of Disciplinary Appeals, is an individual who resides in Travis County, Texas. She may be served in her official capacity with summons in this matter at 205 W. 14th St., Austin, TX, 78711, or wherever she may be found.

12.    Defendant Laura Gibson is the President of the State Bar and a member of the State Bar Board of Directors.

13.    Defendant Cindy V. Tisdale is the President-Elect of the State Bar and a member of the State Bar Board of Directors.

14.    Defendant Sylvia Borunda Firth is the Immediate Past President of the State Bar and a member of the State Bar Board of Directors.

15.    Defendant Chad Baruch is a member of the State Bar Board of Directors and Chair of the Board.

16.    Defendants Benny Agosto, Jr., David N. Calvillo, Elizabeth Sandoval Cantu, Luis Cavazos, Craig Cherry, Jason Charbonnet, Kelly-Ann F. Clarke, Jeff Cochran, David C. Courreges, Thomas A. Crosley, Steve Fischer, Lucy Forbes, Gregory M. Fuller, August W. Harris III, Matthew J. Hill, Forrest L. Huddleston, Lori M. Kern, Modinat Kotun, Bill Kroger, Dwight McDonald, Carra Miller, Lawrence Morales II, Lydia Elizondo Mount, Kimberly M. Naylor, Laura Pratt, Jeanine Novosad Rispoli, Michael J. Ritter, Audie Sciumbato, Mary L. Scott, John Sloan, D. Todd Smith, G. David Smith, Paul K. Stafford, Alex J. Stelly Jr., Nitin Sud, Radha Thiagarajan, Robert L. Tobey, Aaron Z. Tobin, Andrew Tolchin, G. Michael Vasquez, Kimberly Pack Wilson, and Kennon L. Wooten are members of the State Bar Board of Directors ("the State Bar Defendants").

17.    As members of the State Bar Board of Directors, the State Bar Defendants have responsibility for the implementation and enforcement of statutes and policies challenged herein. *See* Tex. Govt. Code § 81.020(a) ("The governing body of the state bar is the board of directors."). The State Bar Defendants are sued in their official capacities.

18.    The State Bar Defendants were, at all relevant times, acting under color of state law in implementing the statutes and policies challenged herein.

## II.
## JURISDICTION AND VENUE

19.    This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 because the claims asserted in this Complaint arise under the Constitution and the laws of the United States.

Specifically, Mr. Turnbull is suing Defendants for violations of the Equal Protection and First Amendment provisions of the Constitution under 42 U.S.C. § 1983. Mr. Turnbull also states claims for violations of the Texas Constitution, Art. 1 §§ 13 and 19. This Court may exercise supplemental jurisdiction over the state law claims under the Texas Constitution under 28 U.S.C. § 1367. Additionally, or in the alternative, the Court has jurisdiction over Mr. Turnbull's state law claims under 42 U.S.C. § 1988.

20.     Venue is proper in the Western District of Texas, Austin Division, because each Defendant either resides in Travis County or has their principal office located there. TEX. CIV. PRAC. & REM. CODE ANN. § 15.002. In addition, Austin, Texas is where the underlying events took place, and Austin, Texas is located within the Western District of Texas.

### III.
### FACTUAL BACKGROUND

#### A. THE UNDERLYING FACTS

21.     Mr. Turnbull's firm, TLG, is a criminal defense firm based in Houston, Texas. TLG represents defendants charged with crimes in Texas state courts through court appointments or by private engagement in matters ranging from DWI to Capital Murder. During the relevant time period, Mr. Turnbull and TLG were actively representing roughly fifty-five criminal defendants, many of whom were incarcerated in the Harris, Brazos, and Montgomery County jails.

22.     Since 2015 TLG had been a subscriber of Microsoft Corporation's ("Microsoft") OneDrive cloud service. TLG used OneDrive to store important documents and data, including case-critical attorney work product and discovery received from the State of Texas ("TLG's Data").

23.     On October 4, 2019, Microsoft notified TLG that it had been locked out of its OneDrive account. Without prior notice or warning of any kind, TLG was denied access to all of

TLG's Data stored on its OneDrive account. In addition, Microsoft remotely removed nearly all locally stored documents and data from TLG's individual computers and hard drives. As a result, TLG's attorneys and staff were unable to access almost all of TLG's Data, including case files containing privileged information, stored locally and on OneDrive.

24.     After locking TLG out of its OneDrive account, Microsoft sent TLG a single, vague notification that TLG had violated its Terms of Service without further explanation. Between October 8, 2019, to October 23, 2019, TLG contacted Microsoft no fewer than fourteen times via telephone, email, chat support, and visits to Microsoft retail locations seeking an explanation for the alleged violation. Mr. Turnbull and TLG explained to Microsoft that the withheld data included time-sensitive and privileged attorney work product for hundreds of present and past clients of TLG, along with documents supplied and owned by the State of Texas. TLG continuously emphasized the urgency of this matter, explaining that many of its incarcerated clients' cases would be delayed and negatively affected if Microsoft continued to withhold TLG's Data.

25.     On October 28, 2019, after almost three weeks of nonresponsive replies from Microsoft, Mr. Turnbull and TLG filed suit against Microsoft and obtained a temporary restraining order (TRO). TLG forwarded the TRO to Microsoft that same day. Only at that point, more than twenty-five days after blocking TLG's access to its OneDrive account and removing work product and discovery from TLG's computers, did Microsoft respond with relevant information.

26.     On October 29, 2019, Brien Jacobsen, an attorney from Microsoft's in-house counsel, responded to TLG by email and a telephone conversation with Mr. Turnbull the following day. During this conversation, Mr. Jacobsen claimed that Microsoft had detected and flagged two images of child pornography among TLG's Data, that the flagged material had been removed from TLG's account, and that TLG had been reported to the federal authorities. No other details or

additional information was provided. Mr. Turnbull explained that as a criminal defense firm, TLG receives large caches of evidence from Texas' state prosecutors' offices, which are then loaded *en masse* onto TLG's OneDrive account. He further explained that State prosecutors' offices are not legally permitted to provide illegal material to TLG. If a case file in TLG's OneDrive account contained any inappropriate images, they were erroneously included in data received from the State of Texas and were likely from a disk or phone dump conducted by law enforcement and given to TLG within large amounts of evidence that included texts, images, app conversations, and offense reports, and was done without anyone from TLG or the supplying District Attorney's office knowing what was contained within the data.

27.    In response, Mr. Jacobsen stated that Mr. Turnbull's explanation was none of his concern. He insisted that Microsoft had permanently terminated TLG's account, that it would not be reinstated, and that none of TLG's Data would be returned. Mr. Turnbull requested that Microsoft contact the federal authorities where the flagged images had been sent so that Microsoft could determine the images origin, contact the appropriate state agency, and resolve the issue. Mr. Jacobsen refused to comply with this request and again reiterated that Microsoft did not reinstate accounts or return any withheld data, regardless of the circumstances.

28.    It is worth noting that, at any time, Mr. Jacobsen and Microsoft (and shortly thereafter, Microsoft's locally retained counsel) could have quickly and easily discovered that there was no child pornography in TLG's Data. The flagged images were two copies of one picture, which originated from a legal website that contained adult pornography. More importantly, Microsoft could have quickly and easily determined that the images in question originated from a case the Harris County District Attorney's office was prosecuting, belonged to the State of Texas,

and were uploaded to TLG's OneDrive account as a part of a 3,000+ page phone dump the day before, on October 3, 2019.

29.     After Mr. Turnbull's conversations with Mr. Jacobsen, Microsoft retained Mary Olga Lovett and Rene Trevino of Greenberg Traurig, LLP as local counsel and Mr. Jacobsen became, and remains, Microsoft's attorney supervising and directing the litigation, Ms. Lovett, and Mr. Trevino. Between November 1, 2019, and November 22, 2019, Mr. Turnbull had multiple conversations with Mrs. Lovett and Mr. Trevino, where he explained the cause of the flagged images and the time-sensitive nature of TLG's Data. Mrs. Lovett and Mr. Trevino represented to Mr. Turnbull that there were long-standing internal policies at Microsoft that needed to be resolved before they could arrange for the return of TLG's Data. In reliance upon Mrs. Lovett and Mr. Trevino's representations, Mr. Turnbull agreed to Microsoft's requests to extend the pending TRO hearing and modify the TRO. Mrs. Lovett and Mr. Trevino assured Mr. Turnbull that they understood and sympathized with TLG's position, and that Microsoft was working towards a resolution of its internal policies so that TLG's Data could be quickly returned. Mrs. Lovett and Mr. Trevino further agreed that they would communicate with the federal agencies where the flagged images had been forwarded to determine whether Mr. Turnbull, TLG, or any TLG attorneys or staff, had been reported. ***Finally, Mrs. Lovett and Mr. Trevino agreed to help stop or reverse whatever reports, if any, had been made to federal authorities. But Mrs. Lovett, Mr. Trevino, and Microsoft misled Mr. Turnbull in making these false representations and failed to fulfill a single one of these promises.***

30.     On December 8, 2019, after not hearing back from Mrs. Lovett, Mr. Trevino, or Microsoft, Mr. Turnbull sent an email requesting an update on the return of TLG's files and Microsoft's conversation with the federal authorities to correct and remove any false and

misleading information that had been reported about Mr. Turnbull, TLG, or any of TLG's attorneys and staff. In this email, Mr. Turnbull assured Microsoft of their continued confidentiality regarding this matter and reminded Microsoft of TLG's urgent need to resolve the matter in hopes that TLG would not be required to hire outside counsel.

31. On December 14, 2019, Mr. Turnbull spoke with Mrs. Lovett or Mr. Trevino about the status of the matter. During this conversation, Mr. Turnbull was informed that Microsoft's new position was that it was impossible to return access to any of TLG's Data. Mrs. Lovett and Mr. Trevino claimed this was a technical impossibility rather than a company policy problem, as they had previously claimed. Mrs. Lovett, Mr. Trevino, Mr. Jacobsen, and Microsoft knew the dire situation facing TLG and its clients, and they knew that Microsoft had flagged only two potentially inappropriate images out of the thousands of files on TLG's OneDrive account. Even still, Microsoft refused to return a single one of TLG's case files or work product.

32. Realizing an impasse had been reached, on January 27, 2019, TLG retained Jeremy Doyle and Solace Southwick of Reynolds Frizzell, LLP. Over the course of the following months, Mrs. Lovett and Mr. Trevino had multiple conversations with Mr. Doyle and Mrs. Southwick about the return of TLG's Data. During these conversations, Mrs. Lovett and Mr. Trevino alternated between technical and policy issues as an excuse for Microsoft's failure to return TLG's Data. The newest explanation Mrs. Lovett and Mr. Trevino offered was that TLG's Data was placed in a format that made it impossible to be returned—a claim that Mrs. Lovett, Mr. Trevino, and Microsoft were later forced to admit was false.

33. On February 6, 2020, Mr. Doyle, Mrs. Southwick, and Mr. Turnbull attended a meeting at the Greenberg Traurig office with Mrs. Lovett, Mr. Trevino, and Mr. Jacobsen. ***During***

*this meeting, Mrs. Lovett unequivocally told Mr. Turnbull that if he continued his efforts to obtain TLG's Data through injunctive relief, they would pursue a criminal investigation against Mr. Turnbull and TLG, involve the State Bar, and file public pleadings that stated TLG and Mr. Turnbull had shared child exploitation images.* Mrs. Lovett was directed and supported in these threats by Mr. Trevino and Mr. Jacobsen, who remained silent throughout these threats. Mr. Turnbull asked Mrs. Lovett, Mr. Trevino, Mr. Jacobsen, and Microsoft not to take any of these actions, especially without providing further explanation. However, on February 7, 2020 (the very next day), *Mrs. Lovett and Mr. Trevino, on behalf of Mr. Jacobsen and Microsoft, filed false and baseless pleadings alleging that Mr. Turnbull and TLG took "direct actions of sharing or making public images of child sexual exploitation imagery" and therein claimed to be preserving the evidence for a criminal investigation.*

34.    On February 17, 2020, with Mrs. Lovett, Mr. Trevino, and Mr. Jacobsen present in the courtroom, the Harris County District Court conducted an evidentiary hearing. Mr. Turnbull provided testimony regarding TLG's loss of access to its case materials for almost five months, forcing TLG to start from scratch rebuilding its files on its most urgent matters. Mr. Turnbull further testified that TLG had to turn down additional engagements while TLG and Mr. Turnbull scrambled to represent its current clients without case files or attorney work product, all due to the actions of Microsoft and its lawyers.

35.    On February 21, 2020, during a status conference held in the Harris County District Court, Mr. Turnbull relayed information he received from the Harris County District Attorney's Office stating that the two flagged images were actually the same image, differing only in size, that the image had a logo on it from a legal adult pornography web site, showed no genitalia, and that the image did not constitute child pornography under Texas law. On March 4, 2020,

Steven Driver, the Chief of The Cyber Crimes Division at the Harris County District Attorney's Office, sent an email confirming this information.

36.     On February 25, 2020, the court found "irreparable harm to TLG, its law practice, and its clients as a result of Microsoft's actions" and entered an injunction requiring Microsoft to immediately return all of TLG's Data, except for the two allegedly offensive images. The court further stated, "[i]t appears to the Court…that, unless Microsoft is ordered to return TLG's case files and attorney work product, Microsoft will continue to withhold that information from TLG. The Microsoft Services Agreement states that all of the case files and attorney work product at issue are owned by TLG, and Microsoft does not claim any ownership in that data. Microsoft has no legal right to TLG's case files and attorney work product." Two days after the court signed this order, Microsoft shipped a hard drive containing most of TLG's Data from Seattle to Houston. The following day, the rest of TLG's Data was shipped on a second hard drive and received on February 29, 2020. Nearly five months after unilaterally removing and blocking all access to TLG's Data, *and after falsely claiming it was impossible to return*, Microsoft managed to return almost one terabyte of data within three days.

37.     On February 27, 2020, six days after it was established that the initial two images were not child pornography and almost five months after TLG's OneDrive account had been suspended and revoked, Mr. Trevino sent an email to Mr. Doyle and Mrs. Southwick claiming two additional images had been discovered during the initial suspension and revocation. Mr. Doyle and Mrs. Southwick requested that *Mrs. Lovett, Mr. Trevino, and Microsoft supply proof of this claim or confirm/admit that they had subsequently accessed TLG's OneDrive account and searched TLG's Data, including privileged information*. Mrs. Lovett, Mr. Trevino, Mr.

Jacobsen, and Microsoft failed to provide the requested information or respond to Mr. Doyle and Mrs. Southwick's requests in any way.

38.     After TLG's Temporary Injunction hearing, the Harris County District Attorney's Office (the Chief Cyber Crimes Prosecutor and the District Attorneys' Cyber Crimes Investigators) reviewed the initial two images for a second time and again confirmed what the office had previously stated: the two initially flagged images were the same image (differing only in size), the image had a logo on it from a legal adult pornography website, the image showed no genitalia, and the image did not constitute child pornography under Texas law. Additionally, they confirmed that the two additional images were again duplicate images of only one picture, in two different sizes. Just as with the first image Microsoft erroneously flagged, the second image did not constitute child pornography under Texas law. Finally, the District Attorney's office confirmed that all of the flagged images were evidence from a phone dump that had been provided to TLG by the Harris County District Attorney's Office in *The State of Texas v. Jonathan Green*.

39.     Based on Mrs. Lovett, Mr. Trevino, and Mr. Jacobsen's violations of the Texas Disciplinary Rules of Professional Conduct, Mr. Turnbull and TLG engaged Gaines West, the undersigned, and West, Webb, Allbritton & Gentry, P.C. On January 11, 2021, I sent a letter to Mrs. Lovett asking her to explain why her actions, and Mr. Trevino and Mr. Jacobsen's actions, did not violate the Texas Disciplinary Rules of Professional Conduct. Mrs. Lovett, Mr. Trevino, and Mr. Jacobsen failed to respond in any way until the Grievances outlined below were filed against them with the State Bar of Texas.

40.     On August 24, 2021, Mrs. Lovett, Mr. Jacobsen, and Microsoft were again asked to communicate with the National Center for Missing & Exploited Children ("NCMEC"), and any federal and state agencies where the image(s) and accompanying data had been forwarded, to stop,

reverse, and remove whatever false and misleading TLG firm and personal information that had been reported. These authorities likely include the FBI, Immigration and Customs, the Post Inspection Service, and the Secret Service. Even though Mrs. Lovett, Mr. Trevino, and Mr. Jacobsen knew the false and misleading nature of the reported information, and the damage it can cause TLG, and any TLG attorney or support staff included, they again directly refused. ***To date, Mrs. Lovett, Mr. Trevino, Mr. Jacobsen, and Microsoft have refused to contact NCMEC and the other applicable federal and state agencies to correct and remove the reported information— information that falsely lists Mr. Turnbull, TLG attorneys, and TLG support staff as having illegally possessed and made public child pornography.***

### B. INTRODUCTION TO THE TEXAS ATTORNEY DISCIPLINARY PROCESS

41.     Mr. Turnbull's claims concern Defendants' abuses of the Texas attorney disciplinary process and selective prosecution for violations of the Texas Disciplinary Rules of Professional Conduct ("TDRPC"). Accordingly, a brief explanation of the first step of Texas's attorney disciplinary process is necessary. The disciplinary process begins when a Grievance is filed with the CDC. Upon receipt, the CDC must determine whether the Grievance, on its face, alleges professional misconduct. If the CDC determines that the Grievance alleges professional misconduct, it is classified as a Complaint. The CDC must then review the Complaint to determine whether "Just Cause" exists to believe that the attorney in question has committed acts that violate the TDRPC. Once the Grievance is upgraded to a Complaint, it is sent to the respondent-attorney for response. If a Grievance fails to allege a violation of the TDRPC, then the Grievance is classified as an Inquiry and dismissed, but that determination may be appealed pursuant to Rule 2.10 of the Texas Rules of Disciplinary Procedure.

C. **The Grievances**

42.     On February 10, 2021, Mr. Turnbull submitted Grievances to the CDC against Mrs. Lovett, Mr. Trevino, and Mr. Jacobsen ("Respondent Attorneys") based on the false, improper, and unjustified statements and behavior detailed above (collectively, the "First Grievances").

43.     Between March 22, 2021, and March 25, 2021, Mr. Turnbull received correspondence from the CDC notifying him that his First Grievances against Mrs. Lovett (March 22, 2021), Mr. Jacobsen (March 24, 2021), and Mr. Trevino (March 25, 2021) had been classified as an Inquiry and dismissed.

44.     On April 9, 2021, Mr. Turnbull appealed the dismissal of the First Grievances against Ms. Lovett and Mr. Trevino to the Board of Disciplinary Appeals ("BODA").

45.     On May 14, 2021, Mr. Turnbull received a letter from Jenny Hodgkins, the Executive Director and General Counsel for BODA (dated May 13, 2021), informing Mr. Turnbull that his appeals to the dismissal of the First Grievances had been granted. Thereafter, the First Grievances against Mrs. Lovett and Mr. Trevino were returned to the CDC for investigation and a determination of whether there was Just Cause to believe the Respondent Attorneys had committed professional misconduct.

46.     On June 18, 2021, Murray Fogler, counsel for the Respondent Attorneys, submitted his consolidated response to the Grievances.

47.     On July 7, 2021, Mr. Turnbull submitted his reply in support of the First Grievances.

48.     On July 15, 2021, Mr. Fogler submitted his sur-reply.

49.     On July 28, 2021, Mr. Turnbull submitted his reply to Mr. Fogler's July 15, 2021, sur-reply.

50.     On August 16, 2021, Mr. Turnbull received correspondence from John S. Brannon, the Assistant Disciplinary Counsel for the CDC (dated August 13, 2021), notifying Mr. Turnbull that the CDC had placed the First Grievances on a Summary Disposition Panel ("SDP") docket. In other words, the CDC employees and officers decided themselves there was no Just Cause to proceed with the First Grievances, instead of referring the them to an Investigatory Hearing ("IVH") panel, which is done in similar matters.

51.     On August 16, 2021, after being retained by Mr. Turnbull, I sent an email to John Brannon, the Assistant Disciplinary Counsel for the CDC, challenging and questioning the CDC's placement of the First Grievances on a Summary Disposition Panel docket.

52.     On August 27, 2021, I sent another email to Mr. Brannon and Mr. Timothy Baldwin (also with the CDC), with an attached article discussing Sidney Powell's scheduled Investigatory Hearing. In the email, I questioned Mr. Brannon and Mr. Baldwin about the CDC's apparent double standard, as evidenced by the referral to the SDP of the First Grievances against Mrs. Lovett and Mr. Trevino compared to the actions taken against Ms. Powell. I further requested that Mr. Brannon and Mr. Baldwin forward the August 27, 2021, email and the August 16, 2021, email to the SDP.

53.     On September 21, 2021, Mr. Turnbull received correspondence from the CDC notifying him that the Summary Disposition Panel of the District 4 Grievance Committee dismissed the First Grievances.

54.     On November 18, 2021, Mr. Turnbull submitted a public information request seeking all documents and materials related to the First Grievances maintained by Mr. Brannon, and all documents and materials supporting the CDCs determinations regarding the First Grievances.

55.     On November 22, 2021, Ms. Claire Reynolds, the Public Affairs Counsel for the CDC, denied Mr. Turnbull's Public Information Request on the grounds that "[c]onfidential attorney disciplinary matters are not subject to the Public Information Act."

56.     On May 2, 2022, Mr. Turnbull submitted new Grievances to the CDC against Mrs. Lovett and Mr. Trevino based on their wrongful withholding of property that belonged to TLG and Mr. Turnbull, their contradictory and untrue explanations as to why Microsoft did not return said property, their threats to pursue a false and baseless criminal investigation, and their refusal to contact the appropriate federal and/or state agencies to have reports containing false and misleading information removed and corrected (the "Second Grievances"). The Second Grievances raised, for the first time, allegations of misconduct based on new and distinct TDRPC violations and one factual event that had not yet occurred when the First Grievances were submitted.

57.     On May 9, 2022, Mr. Turnbull submitted new Grievances to the CDC based on fraud and misrepresentations made by Mrs. Lovett and Mr. Trevino in their responses submitted to the CDC during the First Grievances, specifically an email chain that, upon information and belief, Mrs. Lovett and Mr. Trevino fraudulently altered and misrepresented before submitting it to the Chief Disciplinary Counsel (the "Third Grievance").

58.     On May 25, 2022, the CFLD filed Disciplinary Petitions against Attorney General Ken Paxton[1] and his First Assistant Brent Webster[2] (the "Disciplinary Petitions") based on allegations that these attorneys misrepresented the truth and were dishonest in their pleadings filed with a court. Accordingly, through the Disciplinary Petitions, the CFLD and the CDC gave clear

---

[1] *Commission for Lawyer Discipline v. Warren Kenneth Paxton, Jr.*, Cause No. 471-02574-2022, In the 471st District Court of Collin County, Texas.
[2] *Commission for Lawyer Discipline v. Brent Webster 202101679*, Cause No. 22-0594-C9368, In the 368th District Court of Williamson County, Texas.

instructions that filing pleadings with a court that misrepresent the truth, and are considered to be dishonest, constitute professional misconduct in Texas.

59.    Although the Second Grievances and the Third Grievance were submitted to the CDC one week apart, each Grievance asserted entirely different allegations based on distinct factual events. Despite submitting two separate Grievances, the CDC treated the two Grievance submissions as one. Accordingly, the Second Grievances and the Third Grievance are hereinafter collectively referred to as the "2022 Grievances."

60.    On June 9, 2022, Mr. Turnbull received correspondence from the CDC informing him that the CDC had dismissed the 2022 Grievances based on the unsupported claim that the "allegations have been previously considered and dismissed by a Summary Disposition Panel of the Grievance Committee." However, as previously stated, the 2022 Grievances asserted allegations of misconduct based on new and distinct TDRPC violations, a factual event that had not yet occurred when the First Grievances were submitted, and professional misconduct that occurred during the First Grievances process.

61.    On June 30, 2022, on behalf of Mr. Turnbull, I sent a letter to BODA appealing the dismissal of the 2022 Grievances. My letter requesting the appeal carefully outlined the new (and different) allegations and the factual event detailed in the 2022 Grievances that were not a part of the First Grievances.

62.    On July 25, 2022, Mr. Turnbull received correspondence from BODA (dated July 22, 2022) notifying him that BODA affirmed the dismissal of the 2022 Grievances. In its letter, BODA also stated that "[t]he Board's decision is final." On its face, BODA's dismissal letter fails to comply with requisite service requirements and improperly denies Mr. Turnbull the right to amend the 2022 Grievances in violation of the Texas Rules of Disciplinary Procedure ("TRDP").

Pursuant to TRDP 2.10, Mr. Turnbull has a right to amend his Grievances within 20 days of BODA's correspondence affirming the CDC's dismissal.

63.     On July 28, 2022, I sent a letter to BODA regarding its letter stating that "[t]he Board's decision is final," and I urged BODA to reconsider its decision and permit Mr. Turnbull to amend the 2022 Grievances.

64.     On August 11, 2022, Mr. Turnbull submitted separate amended Grievances for the Second Grievances and the Third Grievances to the CDC (collectively, the "Amended Grievances").

65.     On September 6, 2022, Mr. Turnbull received a package containing the Amended Grievances and a letter from D. Martinez, Assistant Disciplinary Counsel for the CDC (dated August 31, 2022), informing Mr. Turnbull that the Amended Grievances were being returned and "no further amendments or re-filing will be accepted by our office."

66.     On January 24, 2023, Mr. Turnbull received an anonymous email with a profile summary on John Brannon, current Assistant Disciplinary Counsel for the CDC and formerly a partner at the law firm of Thompson & Knight, LLP. Mr. Brannon, as indicated above, oversaw Mr. Turnbull's Grievances against Ms. Lovett and Mr. Trevino and notified Mr. Turnbull of their dismissals on August 16, 2021. Upon investigating the significance of this information, Mr. Turnbull learned that on August 1, 2021, Thompson & Knight, where Mr. Brannon was formally a partner, merged into and became Holland & Knight, the firm representing Mr. Jacobsen in Mr. Turnbull's Grievances filed with the Washington State Bar Association. Less than three weeks after his former law firm merged into and became the same firm representing Mr. Jacobsen and Microsoft, Mr. Brannon notified Mr. Turnbull that the Grievances he was supervising had been placed on a Summary Disposition Panel docket. Mr. Brannon, throughout the grievance process

that lasted for more than one and a half years, never disclosed this conflict of interest, nor did he recuse himself, thereby, on information and belief, violated multiple rules of professional misconduct. This conflict of interest was never disclosed to Mr. Turnbull during the Texas grievance processes, despite what is believed to an obvious conflict of interest that Mr. Brannon had, and despite Mr. Jacobsen's role supervising and directing the Microsoft litigation and supervising and directing Ms. Lovett and Mr. Trevino during what is believed to be their unethical behavior.

67.    Mr. Turnbull has submitted Grievances to the CDC based on the following unethical behavior of the Respondent Attorneys:

1.  Making false statements to Mr. Turnbull regarding the impossibility of Microsoft returning TLG's Data and failing to disclose necessary information regarding the flagged images in violation of TDRPC 4.01(a) and (b);

2.  Intentionally neglecting and repeatedly refusing to contact the appropriate federal and/or state agencies to have the reported misleading and patently false child pornography possession/distribution allegations removed and corrected in violation of TDRPC 3.02, 3.03(b) and (c), 4.01(a), 4.04(a), and 8.04(a)(3);

3.  Filing meritless public pleadings with false allegations of child pornography possession/distribution in a court and threatening to pursue a false and baseless criminal investigation against Mr. Turnbull and TLG's attorneys and staff in violation of TDRPC 3.01, 3.04(c)(3) and (c)(5), 4.01(a) and (b), and 8.04(a)(3);

4.  Threatening to pursue a false and baseless disciplinary investigation against Mr. Turnbull in violation of TDRPC 4.04(a) and (b);

5.  Submitting altered evidence to the CDC— an altered email—during the grievance process in violation of TDRPC 8.01(a), 8.01(b), 8.04(a)(1) and 8.04(a)(3); and,

6.  Conducting an improper search of TLG's account/confidential and privileged information in violation of TDRPC 8.04(a)(3).

68.    Despite Mr. Turnbull's thorough explanations of the Respondent Attorneys' unethical conduct, the CDC has maintained the erroneous position that Mr. Turnbull's Grievances

do not allege professional misconduct. Further, the CDC's findings in Mr. Turnbull's Grievance matters directly contradict the CDC and CFLD's actions taken against Attorney General Ken Paxton, Brent Webster, and Sidney Powell.

69.     Defendants do not enforce the Texas Disciplinary Rules of Professional Conduct equally amongst attorneys charged with unethical conduct. Rather, upon information and belief, Defendants use the Texas grievance process as a tool to prosecute certain prominent lawyers and protect others. As a result of Defendants' selective prosecution, Mr. Turnbull has been unfairly denied relief and his constitutionally protected speech against certain well-connected lawyers, and corporations, has been chilled. Moreover, if Defendants are permitted to continue such clear abuses of Texas's grievance process, the entire system of self-governance enjoyed by Texas attorneys will suffer and may potentially fail. Defendants' actions will likely cause lawyers at small law firms, solo practitioners, and members of the public to have their free speech chilled when speaking out about the alleged actions of other attorneys and corporations. Members of the public, including clients, will see Defendants' selective enforcement as a tool well-connected lawyers and corporations use to insulate themselves from accountability while accumulating more wealth and power. The public will be dissuaded from seeking redress through the Texas State Bar, which may well eventually result in the loss of the ability of Texas lawyers to engage in self-governance. But regardless of whether the Texas legislature intervenes to change this structure in the future, the Constitution prohibits state governments from denying equal protection of law and from denying the First Amendment right to free speech and expression.

70.     Mr. Turnbull attempted every avenue with the Texas State Bar to make his voice heard and to give Defendants the opportunity to remedy their failure to enforce the law equally. Microsoft's attorneys performed multiple acts of misconduct, including falsely claiming in public

pleadings that Mr. Turnbull, his attorneys, and staff shared and made public child pornography. Unfortunately, Texas courts have previously decided that behavior like this is protected by the judicial-proceedings privilege and attorney immunity if it occurs within the context of litigation. But the courts ruled in this way with the expectation that recipients of such misconduct would have a remedy through the Disciplinary Proceedings of the State Bar of Texas. What remedy is left when the CDC refuses to act on unethical behavior where the offending attorney has immunity? What remedy is left, if there is no legal cause of action and/or the CDC refuses to act, when an attorney threatens to pursue a baseless criminal investigation, or submits altered evidence to a court or tribunal, or refuses to correct allegations claiming the possession and publicizing of child pornography when that attorney knows the allegation is patently false and misleading?   On information and belief, the CDC did not even investigate Mr. Turnbull's claims, but simply dismissed them without any explanation. It's unlikely that Mr. Turnbull and his attorneys and staff are the first people or small organization that Microsoft and its attorneys have treated in this manner. What remedy is left for laypersons or other small businesses if the CDC is not ordered to begin treating everyone involved in the Texas legal system, regardless of their economic and/or political status, fairly and unbiased?

71.    Moreover, the "Just Cause" standard outlined in Rule 1.06(Z) of the Texas Rules of Disciplinary Procedure[3] was devised to set a low bar so that most any attorney's complained of behavior and actions would require accountability. The Respondent attorney charged with violating portions of the TDRPC in most circumstances would need to answer for her or his conduct.  Defendants, in violating Plaintiff's constitutional protections, arbitrarily decide which

---

[3] Rule 1.06(z) of the Texas Rules of Disciplinary Procedure defines "Just Cause" as such cause as is found to exist upon a reasonable inquiry that would induce a reasonably intelligent and prudent person to believe that an attorney either has committed an act or acts of Professional Misconduct requiring that a Sanction be imposed, or suffers from a Disability that requires either suspension as an attorney licensed to practice law in the State of Texas or probation.

attorneys will face either an Evidentiary Panel's review, or a District Court's review, for their actions. In 2018, the state law was amended to allow an Investigatory Hearing panel to determine Just Cause and decide whether an attorney must select either an Evidentiary Panel review or District Court review. Inexplicably, Defendants in this matter, namely Mr. Brannon (who had a conflict), on information and belief, made the sole determination to send Mr. Turnbull's Grievances to the SDP, finding that no Just Cause existed for further proceedings. Examining Mr. Brannon's decision to not find Just Cause in Mr. Turnbull's Grievances against the backdrop of decisions to send Grievances filed against Attorney General Ken Paxton, Brent Maxwell, and Sidney Powell to an IVH, simply underscores the arbitrariness of Defendants' decision–making and illegal actions.

72.    Based on the above, Mr. Turnbull has exhausted all administrative remedies available to him and now brings this lawsuit against Defendants.

**IV.**
**CAUSES OF ACTION**

**Count I – Equal Protection Claim under 42 U.S.C. § 1983**

73.    Mr. Turnbull re-alleges each of the preceding paragraphs as fully set forth herein.

74.    Defendants deprived Mr. Turnbull of his right to equal protection of the law afforded to him by the Fourteenth Amendment of the United States Constitution insofar as Defendants' treatment of Mr. Turnbull's Grievances when compared to the Defendants' treatment of what appears now to be the politically motivated Grievances filed against Attorney General Ken Paxton, Brent Maxwell, and Sidney Powell. Ultimately, Defendants treated two similar situations in a manner that has resulted in Mr. Turnbull being discriminated against. As a result, Defendants acted arbitrarily in dismissing Mr. Turnbull's Grievances with the intent to chill his speech and inhibit his equal right to file a Grievance and have it heard.

75. The United States Constitution requires courts to grant equal protection of its laws. The Fourteenth Amendment states in pertinent part, "No State…shall [ ] deny to any person within its jurisdiction the equal protection of its laws." U.S. CONST. AMEND. XIV, § 1. Yet, Defendants chose to treat Mr. Turnbull differently. More specifically, Mr. Turnbull filed Grievances against Mrs. Lovett and Mr. Trevino, as outlined above, for filing pleadings against Mr. Turnbull that asserted false information Mrs. Lovett and Mr. Trevino knew to be false. Defendants dismissed Mr. Turnbull's Grievances against them.

76. On the other hand, the CFLD and CDC filed Disciplinary Petitions against Attorney General Ken Paxton, First Assistant Brent Webster, and Sidney Powell based on allegations that these attorneys misrepresented the truth and were dishonest in their pleadings filed with a court. In summary, Defendants dismissed Mr. Turnbull's Grievances on the purported ground that they failed to articulate professional misconduct, but the CFLD and the CDC's Disciplinary Petitions were for the exact same alleged conduct—filing pleadings with a court that misrepresent the truth and are considered to be dishonest. As such, according to Defendants, two separate parties can commit the exact same conduct, but who the party is will determine whether it is professional misconduct or even worthy of passing the Inquiry stage of the Texas grievance process.

77. Ultimately, Defendants do not enforce the TDRPC equally amongst attorneys. Instead, Defendants use the TDRPC and the grievance process as tools to prosecute certain lawyers and protect others, unequally. Defendants arbitrarily denied Mr. Turnbull's Grievance filings on information and belief because of who he is and who his Grievances were filed against. Mr. Turnbull is a criminal defense attorney and Mrs. Lovett and Mr. Trevino are attorneys for Greenberg Traurig who represented a large business—Microsoft. Because of Mr. Turnbull's political affiliation as a criminal defense attorney, i.e., his politically unpopular and unpowerful

state, and Mrs. Lovett and Mr. Trevino's political affiliation as attorneys for a prominent law firm representing a large business, on information and belief Defendants dismissed Mr. Turnbull's Grievances and gave a free pass to attorneys in more politically popular roles. In the end, Defendants discriminated against Mr. Turnbull and arbitrarily chose *not* to further examine and discipline Mrs. Lovett and Mr. Trevino for the exact same professional misconduct Defendants have filed suit to punish Attorney General Ken Paxton, First Assistant Brent Webster, and Sidney Powell. As a result of Defendants' unequal treatment of similarly situated attorneys, Mr. Turnbull's rights under the Fourteenth Amendment of the Constitution have been violated.

### Count II – First Amendment Claim under 42 U.S.C. § 1983

78.    Mr. Turnbull re-alleges each of the preceding paragraphs as fully set forth herein.

79.    Defendants have retaliated against Mr. Turnbull for exercising free expression.

80.    Defendants deprived Mr. Turnbull of the rights afforded to him under the First Amendment of the United States Constitution. Defendants deprived Mr. Turnbull of his right to freedom of speech insofar as Defendants' actions caused Mr. Turnbull to suffer an injury that would chill the speech of a person of ordinary firmness from continuing to engage in filing Grievances under the Texas grievance process. Defendants' actions have chilled the speech of Mr. Turnbull in pursuing Grievances against Mrs. Lovett and Mr. Trevino.

81.    Mr. Turnbull engaged in protected activity when he spoke up as a concerned citizen on matters of public concern—i.e., Mrs. Lovett and Mr. Trevino's false representations, threats, and other misconduct in the practice of law as outlined above—and filed Grievances with Defendants. However, Defendants on information and belief sought to silence Mr. Turnbull by dismissing his Grievances without any adequate justification. As mentioned above, Defendants on information and belief pick and choose who to grant Grievance examinations against, or pursue

their own actions against, based on prominence, popularity, political affiliation, and professional association. As a result, Defendants' selective prosecution leads to inconsistent results and unequal treatment. Some attorneys have complaints filed against them by Defendants for the exact same conduct that Defendants have dismissed at the Inquiry stage. This case is an example of just that illegal and perplexing dual standard.

82.    Defendants' selective enforcement of the law injured Mr. Turnbull's freedom of expression and damaged him by preventing him from having his professional conduct Complaint heard. Defendants' selective prosecution has chilled Mr. Turnbull's speech by preventing him from being heard in the Texas state grievance process and silencing his complaints for professional misconduct. Mr. Turnbull has brought forth multiple Grievances showing, on their face, violations of the Texas Disciplinary Rules of Professional Conduct by Mrs. Lovett and Mr. Trevino for misrepresenting the truth and being dishonest in their pleadings filed with a court and with the Defendants. Defendants have curtailed Mr. Turnbull's right to speak by dismissing these Grievances without a hearing and further examination of their conduct, and by preventing Mr. Turnbull from testifying before even an IVH panel.

83.    This injury would chill the speech of a person of ordinary firmness from bringing other Grievances under Texas' grievance process. Without the assurance that Defendants will treat claimants equally, and prosecute each Grievance according to the letter of the law, members of the public are discouraged from pursuing Grievances against Texas attorneys. On information and belief, Defendants engage in selective enforcement of the law and hide behind TRDP 2.16 while they issue a No Just Cause determination to dismiss politically unpopular—yet valid—Grievances. Ultimately, Defendants unequal treatment of attorneys based on their popularity, prominence, political affiliation, and professional association, may lead to the destruction of the entire self-

regulation system Texas attorneys currently enjoy. Ordinary members of the public, both lawyers and clients, will be dissuaded from seeking to resolve grievances through the State Bar of Texas as they recognize that Defendants, on information and belief, play politics with the attorney disciplinary system and quietly bury unpopular speech by disposing of politically disfavored Grievances through summary disposition and by concealing any rationale for Defendants' actions as "confidential," even from the Complainant who filed the Grievance. Defendants' brazenness in treating participants, like Mr. Turnbull in this matter, differently based on political association and based on the contents of the expression will chill the speech of ordinary members of the public seeking to hold lawyers accountable.

84.    Defendants, based on information and belief, were motivated to silence Mr. Turnbull by dismissing his Grievances without any investigation based on Mr. Turnbull's political/professional association and based on the contents of his Grievances, which targeted politically well-connected attorneys who represented a very large and prominent business—Microsoft. Defendants dismissed Mr. Turnbull's Grievances at the Inquiry stage without any investigation and without allowing Mr. Turnbull to testify. By contrast, the CFLD and CDC filed Disciplinary Petitions against Attorney General Ken Paxton, First Assistant Brent Webster, and Sidney Powell to punish them for similar conduct Mr. Turnbull complained of. Thus, by dismissing Mr. Turnbull's Grievances founded on clear alleged violations of ethical rules at the Inquiry stage—the very first stage, without any investigation and without allowing any testimony—coupled with Defendants' own actions showing that Defendants' believe that allegations of the very same conduct constitute a violation of the Texas Disciplinary Rules of Professional Conduct, Defendants have shown that the motivation for their arbitrary dismissal of Mr. Turnbull's Grievances, based on information and belief, was based on the content of Mr. Turnbull's speech

calling out politically powerful lawyers for professional misconduct. Defendants' arbitrary and capricious treatment of Mr. Turnbull's speech punishes the exercise of important public expression about the legal profession and chills members of the public from speaking out against lawyers and corporations who will be perceived as above the law as a result of Defendants' actions.

85.    As a result of Defendants' violation of Mr. Turnbull's freedom of speech, Mr. Turnbull has suffered injury.

86.    Defendants have enforced the unconstitutional laws and policies challenged here while acting under color of state law.

### Count III – Claims under Tex. Con. Art. 1 §§ 13 and 19

87.    Mr. Turnbull re-alleges each of the preceding paragraphs as fully set forth herein.

88.    Defendants deprived Mr. Turnbull of the rights afforded to him under Article 1 Section 19 of the Texas Constitution. Defendants deprived Mr. Turnbull of his right to due course of the law under Section 19 of the Texas Constitution insofar as Defendants' application of TRDP 2.16 has deprived Mr. Turnbull of the right to a full and fair explanation for why his Grievances were dismissed on the purported ground that it lacked "Just Cause." TEX. R. DISC. PRO. 2.16. This explanation for Defendants' arbitrary dismissal of Mr. Turnbull's Grievances is required by Article 1, Section 13 of the Texas Constitution, and Section 81.072(b)(2) of the Texas Government Code.

89.    The Texas Constitution requires Texas courts to be open and the Texas Legislature, under Section 81.072(b)(2), guarantees complainants, like Mr. Turnbull, the right to a full and fair explanation. TEX. CONST. ART. 1. § 13. The Texas constitution provides Mr. Turnbull due course of law through the right to open courts and a transparent process, which Defendants have altogether deprived Mr. Turnbull of.

90.    Section 81.072(b)(2) states, "[t]he supreme court shall establish minimum standards and procedures for the attorney disciplinary and disability system. The standards and procedures for processing Grievances against attorneys must provide for: (2) a full explanation to each complainant on dismissal of an inquiry or a complaint." TEX. GOV'T. CODE ANN. § 81.072(b)(2). Accordingly, Complainants like Mr. Turnbull and the Grievances that he filed, have a right to a full and fair explanation and Defendants have arbitrarily denied that right. Because Defendants denied Mr. Turnbull's property right to a full and fair explanation for the reasons his Grievances were dismissed, Defendants have violated Mr. Turnbull's right to due course of law under the Texas Constitution.

91.    In addition, Defendants deprived Mr. Turnbull of his right to due process through open courts as their disciplinary process is fundamentally unfair. On information and belief, Defendants acted like a biased political body instead an impartial tribunal. Ultimately, Defendants must act in a fair and open manner so that participants and the public have confidence that the disciplinary process is not just a sham set up to dismiss Grievances against politically popular lawyers without any investigation or hearing, just as, based on information and belief, the Defendants did here. Instead, our courts have to be open, just as the Texas Constitution demands. If our courts must be open, the Texas grievance system governed by the judicial branch must be open too.

92.    As Article 1, Section 13 of the Texas Constitution states, "[a]ll courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law." TEX. CONST. ART. 1. § 13. Defendants are in violation of Section 13 of the Texas Constitution because they have refused to provide Mr. Turnbull due course of law as they have been anything but open during this disciplinary process.

93.     Finally, under Section 29 of the Texas Constitution, Defendants cannot claim sovereign immunity to avoid their violations of the rights afforded to Mr. Turnbull as a Texas citizen. TEX. CONST. ART. I, § 29. The Bill of Rights under the Texas Constitution are expressly exempted from Defendants' government power.

## Count IV – Claim under Tex. Con. Art. 1 § 3

94.     Mr. Turnbull re-alleges each of the preceding paragraphs as fully set forth herein.

95.     Defendants have deprived Mr. Turnbull of his right to equal protection of the law under Section 13 of the Texas Constitution insofar as the application of TRDP 1.06(Z), 2.10, and 2.16 resulted in Mr. Turnbull being treated differently than other similarly situated complainants in being denied a full and fair explanation for why his Grievances were dismissed for lacking "Just Cause." Defendants have acted arbitrarily because they have denied Mr. Turnbull the recommendation/reasoning for their determination that they would provide to other similarly situated complainants. For example, just one step further in the disciplinary process, Defendants tell complainants everything, including whether an attorney receives a *private reprimand*, information the general public would never be told.

96.     On information and belief, Defendants used the confidentiality provision of Rule 2.16 of the TRDP to hide their reasoning, or lack thereof, for the No Just Cause determination. On information and belief, Defendants hide behind the confidentiality provision when it is convenient for them and when they desire to arbitrarily assign a Grievance to the SDP without giving any justification for their actions. As a result of Defendants' unequal treatment, the application of Rule 2.16 of the TRDP is unconstitutional pursuant to Section 13 of the Texas Constitution.

97.     The Texas Constitution's guarantee of open courts requires that Defendants' self-regulated disciplinary proceedings be transparent and requires Defendants to give complainants "a

full explanation" "on dismissal" as promised by the Texas Government Code. *See* TEX. GOV'T. CODE §81.072(b)(2); *see also* TEX. CONST. ART. 1. § 13. Defendants' denial of that full explanation is a denial of Mr. Turnbull's substantive due process right to a transparent disciplinary proceeding, which is necessary to uphold the Texas Constitution's requirement that our courts be "open."

98.     Ultimately, Defendants' arbitrary and capricious decision to dismiss Mr. Turnbull's Grievances, the reason for which is concealed by Defendants' refusal to provide reasons for the No Just Cause determination, may eventually lead to the demise of the legal system's right to self-regulate. Lawyers have earned the privilege of being a self-regulated profession, yet on information and belief, Defendants threaten this very ideal with arbitrary and capricious decisions like the ones presented to this Court.

## V.
## REQUEST FOR INJUNCTIVE RELIEF

99.     Mr. Turnbull re-alleges each of the preceding paragraphs as fully set forth herein.

100.    Mr. Turnbull requests the Court issue a temporary mandatory injunction against the CFLD, enjoining it to re-open the Grievances against Mrs. Lovett and Mr. Trevino.

101.    Mr. Turnbull's application for injunctive relief against the CFLD is authorized pursuant to *City of Elsa v. M.A.L.*, wherein the Texas Supreme Court held that governmental entities may be sued for injunctive relief under the Texas Constitution. 226 S.W.3d 390 (Tex. 2007) ("In this case we reaffirm that…governmental entities may be sued for injunctive relief under the Texas Constitution."). A temporary mandatory injunction is proper when it "is necessary to prevent irreparable injury or extreme hardship." *Health Care Serv. Corp. v. E. Texas Med. Ctr.*, 495 S.W.3d 333, 339 (Tex. App.—Tyler 2016, no pet.).

102.    If the application for injunctive relief against the CFLD is not granted, Mr. Turnbull and the legal profession will suffer irreparable injury. Specifically, Defendants' actions have

chilled Mr. Turnbull's speech and inhibited his equal right to file a Grievance complaining of professional misconduct and have his complaints heard against individuals who he believes knowingly sought to publicly disclose false information about him. The legal profession, and thereby Mr. Turnbull, will be kept from any mechanism seeking to reprimand attorneys who misrepresent the truth and file dishonest pleadings with a court.

103.    In addition, Mr. Turnbull will experience an irreparable injury because he will be altogether deprived of his right to due course of law under the Texas Constitution. The Texas Constitution provides Mr. Turnbull due course of law through the right to open courts and a transparent process. However, Mr. Turnbull has yet to see an open court or a full and fair explanation for the reason his Complaints were dismissed, both of which are violations of his constitutional rights. Ultimately, Defendants must act in a fair and open manner in order to maintain any confidence from attorneys licensed in Texas, and the public. If Texas's attorney disciplinary system purports to be anything more than a sham organization that exists only to dismiss Grievances against politically popular lawyers without an investigation or hearing, then Defendants cannot continue to act with impunity. The legal profession, and thereby Mr. Turnbull, will be irreparably injured by Defendants' arbitrary and capricious decisions outlined throughout this Complaint. Texas lawyers have the privilege of self-governance. However, if Defendants are permitted to maintain the status quo without interference from this Court, the privilege that is our self-regulated profession may be forever lost.

104.    Mr. Turnbull seeks and is entitled to injunctive relief prohibiting the CFLD from causing Mr. Turnbull, and the rest of the legal profession, irreparable injury.

105.    Mr. Turnbull requests the Court hold a hearing on his request for relief and enter a temporary mandatory injunction enjoining the CFLD to re-open the Grievances against Mrs. Lovett and Mr. Trevino.

## VI.
## ATTORNEY'S FEES

106.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Mr. Turnbull is entitled to recover reasonable and necessary attorneys' fees that are equitable and just. *See* 42 U.S.C. §§ 1983, 1988.

## VII.
## DEMAND FOR JURY TRIAL

107.    Mr. Turnbull demands trial by jury on all triable issues and tenders the jury fee herewith.

## VIII.
## PRAYER FOR RELIEF

WHEREFORE PREMISES CONSIDERED, Mr. Turnbull prays that each of the Defendants be cited to appear and answer herein and that:

(a)    The Court issue an order enjoining the CFLD to re-open the Grievances against Mrs. Lovett and Mr. Trevino;

(b)    The Court issue an order enjoining Defendants to disclose to Mr. Turnbull the reasons his Grievances were dismissed;

(c)    The Court deem Rule 2.16 of the Texas Disciplinary Rules of Procedure unconstitutional as applied;

(d)    The Court hold that the Defendants' unequal treatment amongst attorneys when applying the Texas Disciplinary Rules of Professional Conduct is unconstitutional;

(e)    The Court award Mr. Turnbull First Amendment retaliation damages;

(f)    The Court award Mr. Turnbull attorney's fees and costs of court pursuant to 42 U.S.C. §§ 1983 and 1988 or any other applicable provisions of federal law; and

(g)    For such other and further relief, in law or in equity, general or special, to which Mr. Turnbull may be justly entitled.

Respectfully submitted,

**WEST, WEBB, ALLBRITTON & GENTRY, P.C.**
1515 Emerald Plaza
College Station, Texas 77845
Telephone:  (979) 694-7000
Facsimile:  (979) 694-8000

By:      _/s/ Gaines West_
            GAINES WEST
            State Bar No. 21197500
            Email ~ gaines.west@westwebblaw.com