## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS,
## AUSTIN DIVISION

| | | |
|---|---|---|
| **EDWARD RANDOLPH TURNBULL IV,** | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | |
| **v.** | § | |
| | § | |
| **COMMISSION FOR LAWYER** | § | |
| **DISCIPLINE; THE OFFICE OF THE** | § | **CASE NO. 1:23-cv-00314** |
| **CHIEF DISCIPLINARY COUNSEL;** | § | |
| **SEANA WILLING, in her Official** | § | **JURY TRIAL DEMANDED** |
| **Capacity as Chief Disciplinary Counsel of** | § | |
| **the State Bar of Texas, and in her** | § | |
| **individual capacity; AMANDA M.** | § | |
| **KATES, in her Official Capacity as** | § | |
| **Assistant Disciplinary Counsel for the** | § | |
| **Office of the Chief Disciplinary Counsel,** | § | |
| **and in her individual capacity; JOHN S.** | § | |
| **BRANNON, in his official capacity as** | § | |
| **Assistant Disciplinary Counsel for the** | § | |
| **Office of the Chief Disciplinary Counsel,** | § | |
| **and in his individual capacity; TIMOTHY** | § | |
| **J. BALDWIN, in his official capacity as** | § | |
| **Administrative Attorney for the Office of** | § | |
| **the Chief Disciplinary Counsel, and in his** | § | |
| **individual capacity; DANIEL** | § | |
| **MARTINEZ, in his official capacity as** | § | |
| **Assistant Disciplinary Counsel for the** | § | |
| **Office of the Chief Disciplinary Counsel,** | § | |
| **and in his individual capacity; DANIELA** | § | |
| **GROSZ, in her official capacity as** | § | |
| **Assistant Disciplinary Counsel for the** | § | |
| **Office of the Chief Disciplinary Counsel,** | § | |
| **and in her individual capacity; JENNY** | § | |
| **HODGKINS, in her official capacity as the** | § | |
| **Executive Director & General Counsel** | § | |
| **with the Board of Disciplinary Appeals,** | § | |
| **and in her individual capacity; Laura** | § | |
| **Gibson, Cindy V. Tisdale, Sylvia Borunda** | § | |
| **Firth, Benny Agosto, Jr., David N.** | § | |
| **Calvillo, Elizabeth Sandoval Cantu, Luis** | § | |
| **Cavazos, Craig Cherry, Jason** | § | |
| **Charbonnet, Kelly-Ann F. Clarke, Jeff** | § | |

| | |
|---|---|
| Cochran, David C. Courreges, Thomas A. Crosley, Steve Fischer, Lucy Forbes, Gregory M. Fuller, August W. Harris III, Matthew J. Hill, Forrest L. Huddleston, Lori M. Kern, Modinat Kotun, Bill Kroger, Dwight McDonald, Carra Miller, Lawrence Morales II, Lydia Elizondo Mount, Kimberly M. Naylor, Jeanine Novosad Rispoli, Michael J. Ritter, Audie Sciumbato, Mary L. Scott, John Sloan, D. Todd Smith, G. David Smith, Paul K. Stafford, Alex J. Stelly Jr., Nitin Sud, Radha Thiagarajan, Robert L. Tobey, Aaron Z. Tobin, Andrew Tolchin, G. Michael Vasquez, Kimberly Pack Wilson, and Kennon L. Wooten in their official capacities as Members of the Board of Directors of the State Bar of Texas, *Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

## PLAINTIFF'S RESPONSE TO FIRST AMENDED MOTION TO DISMISS BY DANELIA GROSZ AND DANIEL MARTINEZ

TO THE HONORABLE JUDGE OF WESTERN DISTRICT OF TEXAS:

COMES NOW, Plaintiff, Edward Randolph Turnbull IV ("Turnbull" or "Plaintiff"), and files this Response to Defendants, D. Grosz and Daniel Martinez's, First Amended Motion to Dismiss. (Doc. 24).

### Standard of Review

Under Federal Rule of Civil Procedure 8, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *See* FED. R. CIV. P. 8(a)(2). As the Supreme Court held in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), the pleading standard Rule 8 announces does not require "detailed factual allegations." It is enough that the factual allegations raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true. *See id.* Or, as the *Twombly*

Court put it in its conclusion, the plaintiff must nudge his claims "across the line from conceivable to plausible." *Id.* at 570.

To survive a motion to dismiss, a complaint must allege sufficient facts, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* These standards are the same when a motion to dismiss is based on qualified immunity. *Dyer v. Houston*, 964 F.3d 374, 379 (5th Cir. 2020). The crucial question is whether the complaint pleads facts that, if true, would permit the inference that Defendants are liable under section 1983 and would overcome their qualified immunity defense. *Hinojosa v. Livingston*, 807 F.3d 657, 664 (5th Cir. 2015).

For purposes of deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume that the facts alleged in the complaint are true and construe them in the light most favorable to the plaintiff. *Twombly*, 550 U.S. at 555. For its Rule 12(b)(6) review, the Court may examine the complaint, documents attached to the complaint, and documents attached to the motion to dismiss that are central to the plaintiff's claims and referenced in the complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). A Rule 12(b)(1) factual attack on the court's subject matter jurisdiction may be based on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Kling v. Hebert*, 60 F.4th 281, 284 (5th Cir. 2023).

**Summary of Motion**

In their motion to dismiss, Daniela Grosz ("Grosz") and Daniel Martinez ("Martinez") seek dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) and dismissal for failure to state a claim for relief upon which relief can be granted under Rule 12(b)(6), arguing:

Rule 12(b)(1) grounds —

    (1) Eleventh Amendment immunity bars Turnbull's claims against Defendants;

    (2) Absolute immunity bars Turnbull's claims against Grosz and Martinez;

    (3) Qualified immunity bars individual-capacity claims against Grosz and Martinez;

    (4) Turnbull fails to set forth claims that would make Grosz and Martinez liable in their individual capacity.

Rule 12(b)(6) Grounds —

    (1) Failure to state a claim for relief under Section 1983;

    (2) Failure to state a claim under the First Amendment;

    (3) Failure to state a claim under the Texas Constitution;

    (4) Failure to state a claim for injunctive relief.

Because the grounds for dismissal—as stated by Grosz and Martinez—are somewhat overlapping and fail to distinguish the specific claims brought by Plaintiff against specific Defendants in particular capacities, this Response will discuss the movant's arguments in the following order:

    I.    Assertions of Immunity —

        A.  Eleventh Amendment Immunity

        B.  Absolute Immunity Under State Law

        C.  Qualified Immunity

II.     Federal Claims —

    A.  Equal Protection Claim (under *Ex Parte Young*) against Grosz and Martinez in their official capacity, seeking injunctive relief;

    B.  First Amendment Claim (under *Ex Parte Young*) against Grosz and Martinez in their official capacity, seeking injunctive relief; and

    C.  Equal Protection and First Amendment Claims (under section 1983) against Grosz and Martinez in their individual capacity, seeking damages.

III.    State Claims —

    A.  Due Course of Law Claim (under Texas Constitution) against Grosz and Martinez in their official capacity as Assistant Disciplinary Counsel, seeking injunctive relief; and

    B.  Equal Protection Claim (under Texas Constitution) against Grosz and Martinez in their official capacity as Assistant Disciplinary Counsel, seeking injunctive relief.

IV.     Injunctive Relief

## Argument and Authorities

## I. Assertions of Immunity

### A. Eleventh Amendment Sovereign Immunity

The Grosz/Martinez Motion begins with an Eleventh Amendment immunity challenge to this Court's jurisdiction over Turnbull's claims. The motion cites as authority *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984), but ignores an important exception recognized by the Court in *Pennhurst*—a suit challenging the constitutionality of a state official's action is not one against the State. *See Ex parte Young*, 209 U.S. 123 (1908). Plaintiff is not seeking damages or retrospective relief against the state agency Defendants or Defendant officials in their official capacities. Instead, Plaintiff seeks damages against various Defendants in their individual capacities and only injunctive relief against the Commission for Lawyer Discipline ("CFLD"),

official capacity defendants, and the Board of Directors of the State Bar of Texas ("SBOT")[1]. The

Supreme Court in *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 109 S. Ct. 2304, 105 L. Ed.

2d 45 (1989), reaffirmed that state officers who are violating a federal law may always be sued for

purely injunctive relief. *Id.* at 71 n.10. And the district court in *Civil Rights Corps v. Pestana*, 2022

U.S. Dist. LEXIS 81969 (S.D. N.Y., May 5, 2022), explained application of *Ex Parte Young* to an

11th Amendment sovereign immunity defense asserted in a similar situation as follows:

> Eleventh Amendment immunity does not insulate the Grievance Committee and
> [Chief Counsel] Kearse from every lawsuit. First, ***Kearse may still be sued in her
> individual capacity*** rather than her official capacity. *See Ford v. Reynolds*, 316 F.3d
> 351, 356 (2d Cir. 2003). Second, ***Kearse may still be sued in her official capacity
> for prospective, injunctive relief*** under the doctrine set forth in *Ex parte Young*,
> 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908). *See Henrietta D. v. Bloomberg*,
> 331 F.3d 261, 287 (2d Cir. 2003) ("The Eleventh Amendment, however, does not
> preclude suits against state officers in their official capacity for prospective
> injunctive relief to prevent a continuing violation of federal law."). The *Ex parte
> Young* exception to Eleventh Amendment immunity applies when "the complaint
> alleges an ongoing violation of federal law and seeks relief properly characterized
> as prospective." *D.K. v. Teams*, 260 F. Supp. 3d 334, 352 (S.D.N.Y. 2017) (quoting
> *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645, 122 S. Ct. 1753,
> 152 L. Ed. 2d 871 (2002)).
>
> Plaintiffs' Complaint meets that standard. They seek injunctive relief to stop an
> alleged violation of federal law. They allege Section 90(10) violates the First
> Amendment and that they will face future, continued harassment, retaliation, or
> punishment for exercising their First Amendment rights. In terms of the injury
> alleged and the requested relief, ***this case presents the quintessential lawsuit that
> falls under the Ex parte Young doctrine***.

*Id.*, at *30 (emphasis added).

The CFLD is a committee of the State Bar of Texas, responsible for reviewing the structure,

function, and effectiveness of the disciplinary and disability procedures implemented pursuant to

chapter 81 of the Texas Government Code and Texas Supreme Court rules. *See* Tex. Gov't Code

---

[1] The movants also cite *Cory v. White*, 457 U.S. 85, 89, 102 S. Ct. 2325, 72 L. Ed. 2d 694 (1982) for the proposition that Eleventh Amendment immunity bars Plaintiff's claim for injunctive relief, but in *Cory*, the plaintiff did not allege a violation of federal statutory or constitutional law, which an *Ex Parte Young* action requires. *See Pickering v. Va. State Police*, 59 F. Supp. 3d 742, 747 (E.D. Va. 2014).

§ 81.076(a), (b). The CFLD, with the advice and consent of the SBOT, selects the Chief Disciplinary Counsel ("CDC") "to serve as administrator of the state bar's grievance governance procedure as provided by the Texas Rules of Disciplinary Procedure." *Id.* § 81.076(g). The office of CDC[2] "shall classify" each Grievance as either a Complaint or an Inquiry, and the CDC shall dismiss a Grievance classified as an Inquiry and "shall review and investigate each grievance classified as a complaint to determine whether there is just cause" under the Texas Rules of Disciplinary Procedure ("TRDP"). *Id.* §§ 81.073, 81.074, 81.075(a). After the CDC reviews and investigates a complaint, she either (1) finds there is no just cause and places the Complaint on the dismissal docket to be considered by a panel of a district grievance committee at a closed hearing; or (2) finds just cause (with or without the assistance of an Investigatory Hearing ("IVH") before a panel of a district grievance committee), and—at the election of the respondent attorney—the Complaint is tried in a district court, or—in the absence of such an election—it is placed on a hearing docket to be heard by an Evidentiary Hearing panel of a district grievance committee, where the CFLD and the Respondent Attorney are parties, and the CDC "presents the complainant's case at the hearing." *Id.* §§ 81.075(b), (c), (d), 81.082.

Determining whether a suit may proceed under *Ex Parte Young* requires only that the Court "conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Va. Office of Prot. & Advocacy v. Stewart*, 131 S. Ct. 1632, 1639, 179 L. Ed. 2d 675 (2011) (internal quotation marks omitted). Plaintiff's First Amended Complaint seeks injunctive relief against Grosz and Martinez prohibiting them from continuing to deprive Turnbull of his right to equal protection under the law and

---

[2] Notably, the initial classification requirement is not limited by the statute as an obligation of Willing as CDC, but is instead assigned to the office of CDC. *See* TEX. GOV'T CODE § 81.073. Thus, Grosz and Martinez, as Assistant Disciplinary Counsel, are clearly within the scope of officials potentially involved in the classification process.

requiring them to re-open the Grievances against Lovett and Trevino, and to disclose to Turnbull the reasons his Grievances were dismissed. *See* Am. Compl. ¶¶ 114–21; § VII. Furthermore, Plaintiff's First Amended Complaint seeks damages against Grosz and Martinez in their individual capacity for injuries caused to Turnbull as a result of their actions in violation of his Equal Protection rights and in retaliating against him for exercising his First Amendment rights. *See* Am. Compl. ¶¶ 74–100; § VII. Accordingly, Turnbull has pleaded sufficient facts establishing a basis for this Court's jurisdiction under the *Ex Parte Young* exception to Eleventh Amendment immunity, and the Grosz/Martinez Motion to Dismiss should be denied on that ground.

## B. Absolute Immunity Under State Law

In asserting absolute immunity in their second point, Grosz and Martinez essentially re-assert the same defense they raise under the banner of the Eleventh Amendment,[3] adding only a reference to a Rule promulgated by the Texas Supreme Court. *See* Grosz/Martinez Mot. at p. 10. Regardless of whether Grosz and Martinez are relying upon common law sovereign immunity, or a state-court adopted rule articulating the application of that immunity in a particular situation, the analysis remains the same—whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective such that the claims satisfy the *Ex Parte Young* exception. If immunity from a federal claim does not exist when the *Ex Parte Young* doctrine applies, a state-court created rule cannot change that. Even when prosecutors enjoy absolute immunity from damages liability, they "are natural targets for § 1983 injunctive suits since they

---

[3] After all, their first ground is not really an Eleventh Amendment challenge *per se*—as Turnbull is not a citizen of another state or any foreign state. U.S. CONST. amend. XI. Instead, the broader concept of Eleventh Amendment immunity bars federal courts from entertaining suits against a state, without its consent, brought by its own citizens, not because of the Eleventh Amendment but because of the fundamental rule of sovereign immunity, of which the Amendment is but an exemplification. *Ex parte State of New York*, 256 U.S. 490, 497 (1921).

are the state officers who are threatening to enforce and who are enforcing the law." *Supreme Court of Va. v. Consumers Union*, 446 U.S. 719, 736 (1980).

Moreover, in the case cited by the movants, *Bishop v. State Bar of Texas*, 791 F.2d 435, 438, n.2 (5th Cir. 1986), the district court had already dismissed the request for injunctive relief when it considered the issue of immunity on summary judgment. And the court in *Bishop* specifically said it did not reach the question of whether the defendants were entitled to absolute immunity, concluding only that there was no merit to the plaintiff's contention in that case that he had overcome the qualified immunity defense at summary judgment. *Id.* at 438, n.3.

Likewise, *Diddel v. Davis*, No. H-04-4811, 2006 U.S. Dist. LEXIS 104741, 2006 WL 8444647 (S.D. Tex. Jan. 30, 2006), does not apply because this is not a case complaining of statements made during the grievance process—for which absolute immunity might otherwise apply. Furthermore, Grosz and Martinez are not entitled to absolute immunity as "quasi-judicial" agency officials because they do not perform functions similar to those of judges or prosecutors in a setting similar to that of a court. Specifically, the office of CDC does not afford complainants the type of safeguards necessary to control unconstitutional conduct and insulate the decisionmakers from political influence, and the determination of just cause is not made in an adversary process, nor is it correctable on an appeal in which a complainant may participate. *See Singleton v. Canizzaro*, 956 F.3d 773, 781 (5th Cir. 2020). *See also Beck v. Tex. State Bd. Of Dental Exam'rs*, 204 F.3d 629, 638 (5th Cir. 2000) (finding that absolute immunity does not apply when a member, attorney, or director of a professional licensing board performs an "investigative" function, as opposed to "either an adjudicative or prosecutorial function").

Furthermore, Grosz and Martinez may not shield themselves with sovereign immunity from a violation of the Bill of Rights of the Texas Constitution. TEX. CONST. art. I, § 29 (providing

that "every thing in this 'Bill of Rights' is excepted out of the general powers of government, and shall forever remain inviolate, and all laws contrary thereto, or to the following provisions, shall be void.").

Finally, it should be noted that absolute and qualified immunity defenses are only available in individual capacity suits, not suits in official capacities. *Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 361, 116 L. Ed. 2d 301 (1991) ("officials sued in their personal capacities, unlike those sued in their official capacities, may assert personal immunity defenses"); *Kentucky v. Graham*, 473 U.S. 159, 166-67, 105 S. Ct. 3099, 3105–06, 87 L. Ed. 2d 114 (1985) ("In an official capacity action these [personal immunity defenses] are unavailable"); *Brandon v. Holt*, 469 U.S. 464, 105 S. Ct. 873, 83 L. Ed. 2d 878 (1985) (reversing appellate court decision that qualified immunity shielded director of police department from suit in his official capacity); *Burge v. Parish of St. Tammany*, 187 F.3d 452, 1999 WL 649080, at *13 (5th Cir. Aug. 25, 1999) ("District Attorney may not invoke an absolute prosecutorial immunity privilege in an official capacity suit"). Thus, the movant's assertions of absolute and qualified immunity do not apply to Turnbull's claims for injunctive relief against Grosz and Martinez in their official capacity.

## C. Qualified Immunity

To overcome an assertion of qualified immunity by defendants sued in their individual capacity, a plaintiff must successfully allege that the defendants "violated a statutory or constitutional right, and . . . that the right was 'clearly established' at the time of the challenged conduct." *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011). "To be 'clearly established' for purposes of qualified immunity, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Kinney v. Weaver*, 367 F.3d 337, 349–50 (5th Cir. 2004) (en banc). The key purpose is to create "fair warning," thus

the "clearly established" prong can be satisfied "despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Hope v. Pelzer*, 536 U.S. 730, 740, 122 S. Ct. 2508, 2516 (2002). Turnbull has a clearly established right to be free from government action depriving him of equal protection of the laws and not to be retaliated against for the exercise of his First Amendment rights. *See* U.S. CONST. amend. I; and amend. XIV. No reasonable public official could reasonably have believed that treating Turnbull's grievances differently from the disciplinary petitions against Powell, Paxton, and Webster ("PPW") was not a violation of Turnbull's rights. As discussed in more detail below, Turnbull has stated plausible First and Fourteenth Amendment claims, and Grosz and Martinez's assertion of qualified immunity should be denied.

Finally, Grosz and Martinez's citation to *Alexander v. Walker*, 435 S.W.3d 789, 790 (Tex. 2014), is misplaced because Plaintiff is not asserting a state tort claim and is not relying upon the Texas Tort Claims Act as a waiver of immunity.

## II. Federal Claims

### A. Equal Protection Claim (under *Ex Parte Young*)

Turnbull has alleged a plausible Equal Protection Claim (under *Ex Parte Young*) against Grosz and Martinez in their official capacity, seeking injunctive relief.

Congress enacted section 1 of the Civil Rights Act of 1871, 17 Stat. 13, the precursor to § 1983, shortly after the end of the Civil War "in response to the widespread deprivations of civil rights in the Southern States and the inability or *unwillingness of authorities* in those States *to protect those rights or punish wrongdoers*." *Felder v. Casey*, 487 U.S. 131, 147 (1988) (emphasis added). Such deprivations included not just the refusal of police to enforce the law to punish offenders who had harmed racial minorities, but also prosecutorial and even judicial refusal to

punish those aforementioned offenders. *Webster v. City of Houston*, 689 F.2d 1220, 1234 (5th Cir. 1982). Turnbull has standing to assert these claims under section 1983 because he is the person aggrieved by Grosz and Martinez's selective enforcement of State Bar rules to favor politically popular large businesses and law firms to the detriment of less politically popular or less wealthy criminal defense firms and lawyers like Turnbull. This discrimination has left Turnbull with no means of finding redress for the defamatory, unethical, and abusive conduct of the respondent attorneys in the First, Second and Third Grievances, which threatens to be ongoing due to the fact the parties are still involved in litigation.

Grosz and Martinez deprived Turnbull of his right to equal protection of the law afforded to him by the Fourteenth Amendment of the United States Constitution insofar as their treatment of Turnbull's Grievances when compared to their treatment of what now appears to be politically-motivated Grievances filed against Powell, Paxton, and Webster. Despite the claims against Powell, Paxton, and Webster being the same as those leveled by Turnbull against the respondent attorneys, Turnbull's Grievances were dismissed as Inquiries while those against Powell, Paxton, and Webster were allowed to proceed because they were found to have Just Cause. Turnbull has a right to be treated just like any other aggrieved party who brings unethical conduct for redress to the State Bar, regardless of who or how powerful the respondent attorney may be whose conduct is complained of. While ordinarily a plaintiff has no interest in the discretionary conduct of a prosecutor, a plaintiff does have an interest in the equal treatment and equal enforcement of the laws under section 1983 and the Constitution; and where there is outright discrimination, corruption, or wrongdoing done by authorities in their discretionary conduct, a cause of action and standing must be available. *See Webster v. City of Houston*, 689 F.2d 1220, 1233–35 (5th Cir. 1982) (noting the historical background of section 1983); *see also SBT Holdings, LLC v. Town of*

*Westminster*, 547 F.3d 28, 34 (1st Cir. 2008) (a claim for a "class of one" equal protection violation "is cognizable when—and only when—a 'plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'"); *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir.2008) (recognizing a class-of-one equal protection claim based on plaintiff's allegation that "the defendants simply harbor animus against her *in particular* and therefore treated her arbitrarily") (emphasis in original). Ultimately, Defendants treated two identical situations in a manner that has resulted in Turnbull being discriminated against, and did so because of prejudice in favor of politically popular parties. As a result, Grosz and Martinez acted arbitrarily and with discriminatory intent in classifying Turnbull's Grievances as inquiries and dismissing them with the intent to chill his speech and inhibit his equal right to file a Grievance and have it heard.

The United States Constitution requires courts to grant equal protection of its laws. The Fourteenth Amendment states in pertinent part, "nor shall any State … deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. AMEND. XIV, § 1. Yet, Grosz and Martinez chose to treat Turnbull differently. More specifically, Turnbull filed Grievances against Lovett and Trevino, as outlined in Plaintiff's First Amended Complaint, for filing pleadings against Turnbull that asserted false information, which Lovett and Trevino knew to be false. The office of CDC dismissed Turnbull's Grievances in violation of Turnbull's Equal Protections rights.

On the other hand, the CFLD and CDC filed Disciplinary Petitions against Powell, Paxton, and Webster, based on allegations that these attorneys misrepresented the truth and were dishonest in their pleadings filed with a court. The CDC's office dismissed Turnbull's Grievances on the purported ground that they failed to articulate professional misconduct on the face of his Grievances, but the CFLD and the CDC's Disciplinary Petitions against Powell, Paxton, and

Webster were for the ***exact same alleged conduct***—filing pleadings with a court that misrepresent the truth and are considered to be dishonest. As such, according to the CFLD and CDC's actions, two separate parties can commit the exact same conduct, but who the party is will determine whether it is professional misconduct, or even worthy of passing the Inquiry stage of the Texas grievance process.

Grosz violated Turnbull's Equal Protection rights by dismissing his Second and Third Grievances ("2022 Grievances") based on the unsupported claim that the "allegations have been previously considered and dismissed by a Summary Disposition Panel of the Grievance Committee." As Turnbull pleaded, the 2022 Grievances asserted allegations of misconduct based on new and distinct TDRPC violations, a factual event that had not yet occurred when the First Grievances were submitted, and professional misconduct that occurred during the First Grievances process. *See* Am. Compl. ¶ 60. In addition, Martinez violated Turnbull's Equal Protection rights in ignoring the TRDP by returning the Amended Grievances, wrongfully asserting that "no further amendments or re-filing will be accepted by our office." *See* Am. Compl. ¶ 65. TRDP Rule 2.10.A. expressly provides, "If the Board of Disciplinary Appeals affirms the classification as an Inquiry, the Complainant will be so notified and may within twenty days amend the Grievance one time only by providing new or additional evidence." Martinez deprived Turnbull of this right.

Moreover, Grosz and Martinez deprived Turnbull of his Equal Protection Rights when they determined that Just Cause did not exist and dismissed his Grievances. By determining that Just Cause did not exist for Turnbull's Grievances, while finding Just Cause to bring the PPW Disciplinary Petitions, Turnbull was intentionally treated differently from others similarly situated when there was no rational basis for the difference in treatment. Grosz and Martinez argue that, at best, they "assist[ed] the CDC's classification of the numerous alleged grievances that Turnbull represented to this court that he filed with the CDC's office, and the letters they sent him on behalf of

the CDC." *See* Grosz/Martinez Motion at p. 9. But they offer no authority for the proposition that assisting in a violation of Turnbull's Equal Protection rights is not actionable. And to the extent Grosz and Martinez continue to assist the office of CDC, they remain proper parties, in their official capacity, with respect to Turnbull's claim for prospective injunctive relief, seeking to re-open the Grievances to be investigated and determined without a deprivation of Turnbull's constitutional rights—including but not limited to preventing Grosz from classifying Turnbull's Grievances as Inquiries and preventing Martinez from depriving Turnbull of the right to submit Amended Complaints, as they did before. *See Pickering v. Va. State Police*, 59 F. Supp. 3d 742, 748 (E.D. Va. 2014).

For purposes of a motion to dismiss, Plaintiff's allegations must be taken as true. Turnbull alleges that Defendants do not enforce the Texas Disciplinary Rules of Professional Conduct ("TDRPC") equally among attorneys. Instead, Defendants use the TRDP and the grievance governance process as tools to prosecute certain lawyers and protect others, unequally. Defendants arbitrarily denied Turnbull's Grievances because of who he is and who his Grievances were filed against. Turnbull is a criminal defense attorney and Lovett and Trevino are attorneys for Greenberg Traurig who represented a large business—Microsoft. Because of Turnbull's political affiliation as a criminal defense attorney, *i.e.*, his politically unpopular and unpowerful state, and Lovett and Trevino's political affiliation as attorneys for a prominent law firm representing a large business, Defendants dismissed Turnbull's Grievances and gave a free pass to attorneys in more politically popular roles. In the end, Defendants discriminated against Turnbull and arbitrarily chose *not* to further examine and discipline Lovett and Trevino for the exact same professional misconduct Defendants have filed suit to punish Powell, Paxton, and Webster. As a result of Defendants' unequal treatment of similarly situated attorneys, Turnbull has been deprived of his Equal Protection rights in violation of the Fourteenth Amendment of the Constitution and 42 U.S.C.

§ 1983. *See* Am. Compl. ¶¶ 74–83. Because Turnbull has alleged a plausible Equal Protection claim, the Grosz/Martinez motion to dismiss on that ground should be denied.

**B.  First Amendment Claim (under *Ex Parte Young*)**

Turnbull has alleged a plausible First Amendment Claim (under *Ex Parte Young*) against Grosz and Martinez in their official capacity, seeking injunctive relief.

To establish a First Amendment retaliation claim, a plaintiff must show that: (1) he was engaged in constitutionally protected activity; (2) the defendant's actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendant's adverse actions were substantially motivated by the constitutionally protected conduct. *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002).

Again, the standard is whether Turnbull's complaint, taken as true, plausibly supports a claim of retaliation in violation of the First Amendment. Turnbull alleges that Defendants, including Grosz and Martinez, deprived Turnbull of the rights afforded to him under the First Amendment of the United States Constitution. Grosz and Martinez deprived Turnbull of his right to freedom of speech insofar as Grosz and Martinez's actions caused Turnbull to suffer an injury that would chill the speech of a person of ordinary firmness from continuing to engage in filing Grievances under the Texas grievance process. Grosz and Martinez's actions have chilled the speech of Turnbull in pursuing Grievances against Lovett and Trevino.

The amended complaint further alleges that Turnbull engaged in protected activity when he spoke up as a concerned citizen on matters of public concern—*i.e.*, Lovett and Trevino's false representations, threats, and other misconduct in the practice of law as outlined above—and filed Grievances with Defendants. Grosz and Martinez, however, sought to silence Turnbull by classifying his Grievances as Inquiries, dismissing his Grievances without any adequate justification, and depriving him of his right to file Amended Grievances as permitted by the TRDP.

As mentioned above, Defendants pick and choose who to grant Grievance examinations against, or pursue their own actions against, based on prominence, popularity, political affiliation, and professional association. Defendants' selective prosecution leads to inconsistent results and unequal treatment. Some attorneys have complaints filed against them by Defendants for the exact same conduct that Defendants have dismissed at the Inquiry stage. This case is an example of just that illegal and perplexing dual standard.

Defendants' selective enforcement of the law injured Turnbull's freedom of expression and damaged him by preventing him from having his professional conduct Grievances heard. Defendants' selective prosecution has chilled Turnbull's speech by preventing him from being heard in the Texas state grievance governance process and silencing his Grievances of, and about, professional misconduct. Turnbull has brought forth multiple Grievances showing, on their face, violations of the TDRPC by Lovett and Trevino for misrepresenting the truth and being dishonest in their pleadings filed with a court and with the Defendants. Defendants have curtailed Turnbull's right to speak by dismissing these Grievances without a hearing and further examination of their conduct, and by preventing Turnbull from testifying before any IVH panel.

This injury would chill the speech of a person of ordinary firmness from bringing other Grievances under Texas' grievance process. Without the assurance that Defendants will treat claimants equally, and prosecute each Grievance according to the letter of the law, members of the public are discouraged from pursuing Grievances against Texas attorneys. Defendants engage in selective enforcement of the law and hide behind TRDP 2.16 while they issue a No Just Cause determination to dismiss politically unpopular—yet valid—Grievances. Ultimately, Defendants unequal treatment of attorneys based on their popularity, prominence, political affiliation, and professional association, will lead to the destruction of the entire self-regulation system Texas

attorneys currently enjoy. Ordinary members of the public, both lawyers and clients, will be dissuaded from seeking to resolve Grievances through the State Bar of Texas as they recognize that Defendants play politics with the attorney disciplinary system and quietly bury unpopular speech by disposing of politically disfavored Grievances through summary disposition and by concealing any rationale for Defendants' actions as "confidential," even from the Complainant who filed the Grievance. Defendants' brazenness in treating participants, like Turnbull in this matter, differently based on political association and based on the contents of the expression will chill the speech of ordinary members of the public seeking to hold lawyers accountable.

Defendants were motivated to silence Turnbull by dismissing his Grievances without any investigation based on Turnbull's political/professional association and based on the contents of his Grievances, which targeted politically well-connected attorneys who represented a very large and prominent business—Microsoft. Defendants dismissed Turnbull's Grievances at the Inquiry stage without any investigation and without allowing Turnbull to testify. By contrast, the CFLD and CDC filed Disciplinary Petitions against Powell, Paxton, and Webster, to punish them for conduct that was identical to the conduct Turnbull complained of. Thus, by dismissing Turnbull's Grievances founded on clear alleged violations of ethical rules at the Inquiry stage—the very first stage, without any investigation and without allowing any testimony—coupled with Defendants' own actions showing that Defendants' believe that allegations of the very same conduct constitute a violation of the TDRPC, Defendants have shown that the motivation for their arbitrary dismissal of Turnbull's Grievances was based on the content of Turnbull's speech calling out politically powerful lawyers for professional misconduct. Defendants' arbitrary and capricious treatment of Turnbull's speech punishes the exercise of important public expression about the legal profession

and chills members of the public from speaking out against lawyers and corporations who will be perceived as above the law as a result of Defendants' actions.

### C. Equal Protection and First Amendment Claims (under section 1983)

As detailed above, in addition to a claim against Grosz and Martinez in their official capacity, seeking injunctive relief, Turnbull has alleged plausible Equal Protection and First Amendment Claims (under section 1983) against Grosz and Martinez in their personal capacity, seeking damages for violating his Equal Protection rights and retaliating against him for exercising his First Amendment rights.

## III. State Claims

### A. Due Course of Law Claim (under Texas Constitution)

Turnbull has asserted a plausible Due Course of Law Claim (under the Texas Constitution) against Grosz and Martinez in their official capacity as Assistant Disciplinary Counsel, seeking injunctive relief. "It is clear that the protection afforded under the procedural due process rights granted by article I, section 19, are congruent with those in the Federal Constitution." *Price v. City of Junction*, 711 F.2d 582, 590 (5th Cir. 1983).

Grosz and Martinez deprived Turnbull of the rights afforded to him under Article 1, Section 19, of the Texas Constitution by denying him due course of law insofar as Defendants' application of TRDP 2.16 has deprived Turnbull of the right to a full and fair explanation for why his Grievances were dismissed on the purported ground that it lacked Just Cause. TEX. R. DISC. PRO. 2.16. This explanation for Defendants' arbitrary dismissal of Turnbull's Grievances is required by Article 1, Section 13, of the Texas Constitution, and Section 81.072(b)(2) of the Texas Government Code.

Section 81.072(b)(2) states, "[t]he supreme court shall establish minimum standards and procedures for the attorney disciplinary and disability system. The standards and procedures for

processing Grievances against attorneys must provide for: (2) a full explanation to each complainant on dismissal of an inquiry or a complaint." TEX. GOV'T. CODE ANN. § 81.072(b)(2). Accordingly, complainants like Turnbull have a right to a full and fair explanation, which Grosz and Martinez have arbitrarily denied. Because Defendants denied Turnbull's property right to a full and fair explanation for the reasons his Grievances were dismissed, Defendants have violated Turnbull's right to due course of law under the Texas Constitution.

### B.  Equal Protection Claim (under Texas Constitution)

Turnbull has asserted a plausible Equal Protection Claim (under the Texas Constitution) against Grosz and Martinez in their official capacity as CDC, seeking injunctive relief.

"[T]he federal analytical approach applies to equal protection challenges under the Texas Constitution[.]" *Lindquist v. City of Pasadena Tex.*, 669 F.3d 225, 233 (5th Cir. 2012). For the same reasons Grosz and Martinez have violated Turnbull's Equal Protection rights under the United States Constitution, Grosz and Martinez have violated Turnbull's Equal Protection rights under article I, section 3, of the Texas Constitution.

In the alternative, if this Court dismisses Plaintiff's federal claims and the Court declines to exercise supplemental jurisdiction over his state-law claims, Turnbull's state-law claims should be dismissed *without prejudice*. *See Edwards v. DART*, No. 3:14-cv-417-P-BN, 2014 U.S. Dist. LEXIS 158927, at *6–7 (N.D. Tex. Aug. 27, 2014).

### IV. Injunctive Relief

Turnbull has sufficiently alleged grounds for injunctive relief. *See Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011) (listing the four elements a plaintiff must establish to secure a preliminary injunction). The four elements a plaintiff must establish to secure a preliminary injunction are:

(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest.

*Id.* Although this case is only at the pleading stage, Plaintiff's First Amended Complaint alleges sufficient facts to demonstrate a substantial likelihood of success on the merits, as discussed above. Furthermore, the facts as alleged demonstrate a substantial threat of irreparable injury and that the threatened injury outweighs any harm that will result if the injunction is granted. Finally, the injunctive relief requested will not disserve the public interest—but will, instead, serve the public interest. *See* Pl.'s First Am. Compl. ¶¶ 114–21.

**Prayer for Relief**

Accordingly, Turnbull prays that the Grosz/Martinez Motion to Dismiss be denied and that this Court grant such other and further relief, in law or in equity, general or special, to which Turnbull may be justly entitled.

Respectfully submitted,

**WEST, WEBB, ALLBRITTON & GENTRY, P.C.**
1515 Emerald Plaza
College Station, Texas 77845
Telephone:  (979) 694-7000
Facsimile:   (979) 694-8000

By:      */s/ Gaines West*
         GAINES WEST
         State Bar No. 21197500
         Email ~ gaines.west@westwebblaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have served a true and correct copy of this document upon each attorney of record through the Court's ECF system on this the 15th day of June 2023.

_/s/ Gaines West_____
GAINES WEST