## IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| **EDWARD RANDOLPH TURNBULL IV,** | § § § | |
| *Plaintiff,* | § § | |
| **v.** | § § | **CASE NO. 1:23-cv-00314** |
| **COMMISSION FOR LAWYER DISCIPLINE, ET AL.** | § § § | |
| *Defendants.* | § § | |

---

### DEFENDANT JENNY HODGKINS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)

---

## TABLE OF CONTENTS

I.      BACKGROUND ...................................................................................................1

        A.      The Role of the Executive Director ......................................................1

        B.      Classification Appeals ...........................................................................2

        C.      The Turnbull Grievances .......................................................................3

II.     Hodgkins's Motion to Dismiss Pursuant to Federal Rule of Civil
        Procedure 12(b)(1) ...........................................................................................5

        A.      Standard .................................................................................................5

        B.      Turnbull lacks standing to bring claims against Hodgkins ...................6

                i.      Hodgkins cannot provide the relief Turnbull seeks in an
                        injunction and therefore Turnbull cannot meet the
                        redressability prong of standing ................................................6

                ii.     Turnbull lacks standing to complain about the alleged
                        failure to prosecute other attorneys ..........................................7

        C.      Hodgkins is entitled to absolute and unqualified immunity based
                on her administrative role in the disciplinary process ...........................8

        D.      Hodgkins is entitled to Eleventh Amendment Immunity .....................11

III.    Hodgkins's Motion to Dismiss Pursuant to Federal Rule of Civil
        Procedure 12(b)(6) .........................................................................................12

        A.      Standard ...............................................................................................12

        B.      Turnbull has failed to state a claim because he fails to detail how
                Hodgkins was involved in the unlawful conduct he alleges in his
                Amended Complaint .............................................................................13

        C.      Turnbull fails to state an Equal Protection claim .................................15

        D.      Turnbull fails to state a First Amendment claim .................................16

        E.      Turnbull's "due course of law" claim under the Texas Constitution
                fails .......................................................................................................17

        F.      Turnbull's "open courts" claim must fail.............................................18

        G.      Hodgkins has qualified immunity for all claims against her in her
                individual capacity ...............................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. al-Kidd,*
    563 U.S. 731 (2011)............................................................................................20

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)............................................................................................13

*Austin Mun. Sec., Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.,*
    757 F.2d 676 (5th Cir. 1985) .............................................................................9

*Backe v. LeBlanc,*
    691 F.3d 645 (5th Cir. 2012) ...........................................................................19

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)............................................................................................13

*Bell v. Low Income Women,*
    95 S.W.3d 253 (Tex. 2002)...............................................................................15

*Brinson v. McKeeman,*
    992 F. Supp. 897 (W.D. Tex. 1997)...............................................................16

*Buckley v. Fitzsimmons,*
    509 U.S. 259 (1993).............................................................................................9

*Carswell v. Camp,*
    54 F.4th 307 (5th Cir. 2022) ...........................................................................19

*CenterPoint Energy Res. Corp. v. Ramirez,*
    640 S.W.3d 205 (Tex. 2022)............................................................................18

*Clay v. Allen,*
    242 F.3d 679 (5th Cir. 2001) ...........................................................................10

*Da Vinci Inv., Ltd. P'ship v. Parker,*
    622 Fed. Appx. 367 (5th Cir. 2015).................................................................8

*Danos v. Jones,*
    652 F.3d 577 (5th Cir. 2011) ...........................................................................15

*Diddel v. Davis,*
    2006 WL 8444647 (S.D. Tex. 2006) ................................................................9

*Doe v. Bd. of Directors of State Bar of Tex.*,
2015 WL 6656216 (Tex. App.—Austin Oct. 27, 2015, pet. denied)....................................17

*Engquist v. Oregon Dep't of Agr.*,
553 U.S. 591 (2008)...............................................................................................................15

*Evans v. Suter*,
260 Fed. Appx. 726 (5th Cir. 2007).......................................................................................10

*Green v. State Bar of Texas*,
27 F.3d 1083 (5th Cir. 1994) ...........................................................................................12, 16

*Hanover Township Fed'n of Teachers v. Hanover Cmty. Sch. Corp.*,
457 F.2d 456 (1972)...............................................................................................................16

*Hawaii v. Gordon*,
373 U.S. 57 (1963) (per curiam) ...........................................................................................12

*Heckman v. Williamson Cty.*,
369 S.W.3d 137 (Tex. 2012)....................................................................................................6

*Helton v. Clements*,
787 F.2d 1016 (5th Cir. 1986) (per curiam)...........................................................................19

*Home Builders Ass'n of Miss., Inc. v. City of Madison*,
143 F.3d 1006 (5th Cir. 1998) .................................................................................................5

*Imbler v. Pachtman*,
424 U.S. 409 (1976).................................................................................................................9

*Johnson v. Kegans*,
870 F.2d 992 (5th Cir. 1989), cert. denied, 492 U.S. 921, 109 S.Ct. 3250, 106
L.Ed.2d 596 (1989)..................................................................................................................8

*In re Katrina Canal Breaches Litig.*,
495 F.3d 191 (5th Cir. 2007) .................................................................................................12

*Kirkendall v. Grambling & Mounce, Inc.*,
4 F.3d 989, 1993 WL 360732 (5th Cir. 1993) ........................................................................8

*Lane v. Halliburton*,
529 F.3d 548 (5th Cir. 2008) ...................................................................................................6

*Lefebure v. D'Aquilla*,
*15 F.4th 650, 652 (5th Cir. 2021), cert. denied, 212 L. Ed. 2d 791, 142 S. Ct.*
*2732 (2022)*..............................................................................................................................7

*Linda R.S. v. Richard D.*,
410 U.S. 614 (1973)........................................................................................7

*Little v. KPMG LLP*,
575 F.3d 533 (5th Cir. 2009) .........................................................................6

*Lozano v. Smith*,
718 F.2d 756 (5th Cir. 1983) .......................................................................13

*Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*,
369 F.3d 464 (5th Cir. 2004) .......................................................................13

*Martinez v. State B. of Texas*,
797 F. App'x 167 (5th Cir. 2020) (unpublished)...........................7, 16, 17, 20

*Moreno v. Sterling Drug, Inc.*,
787 S.W.2d 348 (Tex. 1990).........................................................................18

*Mullis v. United States Bankr. Court for Dist. of Nevada*,
828 F.2d 1385 (9th Cir. 1987) .....................................................................10

*Murphy v. Kellar*,
950 F.2d 290 (5th Cir. 1992) .......................................................................13

*Pearson v. Callahan*,
555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)...............................19

*Pennhurst State Sch. & Hosp. v. Halderman*,
465 U.S. 89 (1984)...............................................................................11, 12

*Raj v. La. State Univ.*,
714 F.3d 322 (5th Cir. 2013) .................................................................12, 18

*Ramirez v. Guadarrama*,
3 F.4th 129 (5th Cir. 2021) (per curiam) ....................................................19

*Ramming v. United States*,
281 F.3d 158 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002)...............6

*Rizzo v. Goode*,
423 U.S. 362 (1976)......................................................................................13

*Rosales v. Comm'n for Lawyer Discipline*,
2020 WL 1934815 (Tex. App.—Austin Apr. 22, 2020, no pet.).................7

*Rountree v. Dyson*,
892 F.3d 681 (5th Cir. 2018) .................................................................15, 16

*Slavin v. Curry*,
   574 F.2d 1256 (5th Cir. 1978), modified on other grounds on rehearing, 583
   F.2d 779 (5th Cir. 1978) ..................................................................................9

*Smith v. Arkansas State Hwy. Emp., Loc. 1315*,
   441 U.S. 463 (1979) .........................................................................................16

*Stefanoff v. Hays County, Tex.*,
   154 F.3d 523 (5th Cir. 1998) ...........................................................................15

*Thompson v. Steele*,
   709 F.2d 381 (5th Cir. 1983) ...........................................................................13

*Trinity River Auth. v. URS Consultants, Inc.-Tex.*,
   889 S.W.2d 259 (Tex. 1994) ............................................................................18

*Univ. of Tex. Med. School at Houston v. Than*,
   901 S.W.2d 926 (Tex. 1995) ............................................................................17

*Villanueva v. United States*,
   2020 WL 1234943 (W.D. Tex. Mar. 13, 2020) .................................................9

*Vincent v. City of Sulphur*,
   805 F.3d 543 (5th Cir. 2015) ...........................................................................20

*Ex parte Young*,
   209 U.S. 123 (1908) ...................................................................................12, 18

**Statutes**

42 U.S.C. § 1983 .....................................................................................................13, 15

TEX. GOV'T CODE § 81 (State Bar Act) ....................................................................1, 18

TEX. GOV'T CODE § 81, Subchapter E-1 .........................................................................2

TEX. GOV'T CODE § 81.072 ..........................................................................................20

TEX. GOV'T CODE § 81.072(b)(2) .................................................................................17

TEX. GOV'T CODE § 81.072(o) ......................................................................................11

TEX. GOV'T CODE § 81.073 ...................................................................................2, 3, 11

TEX. GOV'T CODE § 81.073(b) ...................................................................................1, 3

**Rules**

FED. R. CIV. P. 12(b)(1) ......................................................................................... *passim*

FED. R. CIV. P. 12(b)(6) ...................................................................................................1, 12, 13

TEX. R. DISCIPLINARY P. pt. VII ...................................................................................................1

TEX. R. DISCIPLINARY P. Part VII .............................................................................................12

TEX. R. DISCIPLINARY P. R. 1.06(R) .........................................................................................11

TEX. R. DISCIPLINARY P. R. 2.10..................................................................................................2

TEX. R. DISCIPLINARY P. R. 2.10(A) .......................................................................1, 2, 16, 18

TEX. R. DISCIPLINARY P.R. 2.12 .............................................................................................2, 14

TEX. R. DISCIPLINARY P. R. 2.12-.14 ......................................................................................2, 4

TEX. R. DISCIPLINARY P. R. 2.12-.14, pt. VII ............................................................................5

TEX. R. DISCIPLINARY P. R. 2.16...........................................................................................2, 3, 4

TEX. R. DISCIPLINARY P. R. 2.16................................................................................................14

TEX. R. DISCIPLINARY P. R. 5.02................................................................................................14

TEX. R. DISCIPLINARY P. R. 7.05.............................................................................................1, 13

TEX. R. DISCIPLINARY P. R. 7.08(A) ...........................................................................................2

TEX. R. DISCIPLINARY P. R. 7.08(C) .......................................................................................1, 2

TEX. R. DISCIPLINARY P. R. 7.11...........................................................................................3, 10

TEX. R. DISCIPLINARY P. R. 15.09................................................................................................9

TEX. R. DISCIPLINARY P. R. 17.09..........................................................................................9, 20

**Constitutional Provisions**

First Amendment .............................................................................................................16

Texas Constitution ............................................................................................15, 17, 18

United States Constitution Eleventh Amendment ........................................11, 12, 18

**Other Authorities**

BODA IPR 1.01(d) .............................................................................................1, 4, 10, 13

BODA IPR 1.04(a).........................................................................................................3, 14

BODA IPR 1.05(a)......................................................................................................................14

BODA IPR 1.10(a).........................................................................................................1, 4, 10, 14

TO THE HONORABLE COURT:

Defendant Jenny Hodgkins, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), moves that the Court dismiss Plaintiff Turnbull's claims against her for lack of subject-matter jurisdiction and for failure to state a claim on which relief can be granted.

## I.   BACKGROUND

The Board of Disciplinary Appeals (BODA) is a statewide independent adjudicatory body of twelve attorneys appointed by the Supreme Court of Texas to hear certain attorney discipline cases and to promote consistency in interpretation and application of the Texas Disciplinary Rules of Professional Conduct ("TDRPC") and the Texas Rules of Disciplinary Procedure ("TRDP"). TEX. R. DISCIPLINARY P. Part VII. The Board is governed by the TRDP (promulgated by the Texas Supreme Court), the State Bar Act (Texas Government Code Chapter 81) (enacted by the Legislature), and the Board of Disciplinary Appeals Internal Procedural Rules ("BODA IPR") (promulgated by the Texas Supreme Court). Among other things, and as relevant in this matter, BODA exercises appellate jurisdiction over the initial classification of grievances against Texas attorneys. TEX. R. DISCIPLINARY P. R. 2.10(A); 7.08(C); TEX. GOV'T CODE § 81.073(b).

## A.   The Role of the Executive Director

Defendant Jenny Hodgkins is the Executive Director and General Counsel of BODA. She is not a member of the Board appointed by the Texas Supreme Court and does not cast a vote on matters adjudicated by the Board. *See* TEX. R. DISCIPLINARY P. R. 7.05. The Executive Director of BODA performs an administrative duty in facilitating the operation of the Board and provides legal counsel. The Executive Director "assume[s] all duties normally performed by the clerk of a court." BODA IPR 1.01(d). Acting as BODA clerk, one of the Executive Director's duties is to notify parties of all decisions. BODA IPR 1.10(a). Importantly, the BODA Executive Director is not a part of the Office of the Chief Disciplinary Counsel ("CDC"), the Commission for Lawyer

Discipline, or the State Bar Board of Directors. Specifically, the Executive Director has no involvement in, or even knowledge of, the conduct of an investigation of a grievance that has been classified as a complaint. *See* TEX. R. DISCIPLINARY P. R. 2.12-.14, .16. In addition, the Executive Director has no power to amend either the TRDP or the BODA Internal Procedural Rules. *See* TEX. R. DISCIPLINARY P. R. 7.08(A), TEX. GOV'T CODE Chapter 81, Subchapter E-1.

## B.    Classification Appeals

Once a grievance is filed in Texas, CDC must determine whether to classify the grievance as a "complaint" (a writing that alleges conduct that, if true, constitutes professional misconduct) or an "inquiry" (a writing that alleges conduct that, even if true, does not constitute professional misconduct cognizable under the TDRPC). TEX. RULES DISCIPLINARY P. R. 2.10; TEX. GOV'T CODE § 81.073. During this initial screening, if CDC determines that the allegations do not constitute professional misconduct, the writing is dismissed as an inquiry. TEX. RULES DISCIPLINARY P. R. 2.10. A complainant has the right to appeal the dismissal of a grievance as an inquiry to BODA. TEX. RULES DISCIPLINARY P. R. 2.10(A); 7.08(C).  When a notice of appeal from a classification decision has been filed, CDC must forward to BODA a copy of the grievance, and BODA may only consider documents that were filed with CDC prior to the classification decision. IPR 3.02. Three-member panels of the Board are assigned to hear weekly dockets of classification appeals. BODA IPR 1.04. If the Board members disagree with CDC's initial classification of a grievance (i.e., they determine that the grievance describes conduct that, if true, constitutes professional misconduct), they "reverse" the classification as an inquiry and the dismissal of the grievance; the grievance is then reclassified as a complaint, and the matter is returned to CDC for investigation and to determine just cause. TEX. RULES DISCIPLINARY P. R. 2.10, 2.12, 7.08(C). Neither the Board, nor the Executive Director, have any knowledge of, or participation in, the process that follows the reversal of grievance. *See* TEX. R. DISCIPLINARY P. R.

2.12-.14, .16. If the Board "affirms" CDC's classification of a grievance as an inquiry (i.e., they determine that it does not state a claim for professional misconduct), the complainant "may, within twenty days, amend the Grievance one time only by providing new or additional evidence."[1] Disposition letters contain standard language; for every classification decision affirmed by BODA, the letter includes the phrase "[t]he Board's decision is final" to reflect that, pursuant to Rule 7.11 of the TRDP, "[d]eterminations by the Board of Disciplinary Appeals that a statement constitutes an Inquiry . . . are conclusive, and may not be appealed to the Supreme Court." This process happens on a routine basis, as BODA adjudicates over 1,000 classification appeals every year.

The Executive Director's role in the classification appeal process is administrative. She oversees the filing and docketing of appeals, the assignment of classification appeals to three-member panels, facilitates panel conferences and deliberations, and she is responsible for communicating the disposition to the parties. BODA IPR 1.04, 1.10(a).

## C.     The Turnbull Grievances

All Turnbull grievances against Texas attorneys Lovett and Trevino were processed and adjudicated in the normal course of Board duties and operations. Upon receipt of the initial notices of appeal, BODA obtained the classification files from CDC and assigned the appeals to a three-member panel. Though CDC classified Turnbull's initial grievances as inquiries and dismissed

---

[1] The TRDP and the State Bar Act contain slightly different provisions regarding the amendment of a grievance.  While the TRDP provide that an amendment can be made *after* an appeal to BODA, the State Bar Act states that a complainant may opt to submit an amended grievance immediately after CDC's initial classification decision without requiring an appeal to BODA as a prerequisite. *See* TEX. GOV'T CODE § 81.073(b) ("A complainant may appeal the classification of a grievance as an inquiry to the Board of Disciplinary Appeals, or the complainant may amend and resubmit the grievance. An attorney against whom a grievance is filed may not appeal the classification of the grievance."). BODA will consider and decide a classification appeal whether it is from an initial CDC classification or from CDC classification of an amended grievance. *See* BODA IPR 3.02 (requiring transmittal of the amended and original grievance in classification appeals concerning amended grievances).

them, the Board reversed this determination and referred the matter back to CDC for investigation. Doc. 20 at 15-16. Hodgkins communicated this disposition pursuant to her routine duties as the BODA Clerk. BODA IPR 1.01(d); 1.10(a); Doc. 20 at 15-16. Neither Hodgkins nor any member of the Board had any involvement in or knowledge of the ensuing investigation by CDC and subsequent proceedings that form the basis of much of Turnbull's Amended Complaint—indeed, investigating grievances classified as complaints, making just cause determinations, and all proceedings involving complaints are entirely outside the purview of BODA and its Executive Director. *See* TEX. R. DISCIPLINARY P. R. 2.12-.14, .16.

In 2022, the Board received notices of appeals for two subsequent grievances filed by Turnbull against Lovett and Trevino. CDC had again classified these grievances as inquiries, and Turnbull again appealed to BODA. Doc. 20 at 19. As with the first set of grievances, BODA received the classification files from CDC and assigned the appeals to a three-member panel. BODA IPR 1.04; 3.02.  This time, the panel affirmed CDC's initial classification of the grievances. Doc. 20 at 19-20. Defendant Hodgkins again communicated the result to the parties pursuant to her official duties as the BODA Clerk. BODA IPR 1.01(d); 1.10(a); Doc. 20 at 15-16. The disposition letter contained the standard language for affirming classification decisions.

Turnbull's counsel (who also represented Turnbull in the classification appeals before BODA) sent a letter to Defendant Hodgkins on July 28, 2022, predicated on his incorrect belief that the disposition of the second grievances was somehow dispositive of his right to amend the grievances filed against Lovett and Trevino, and urging the Board to reconsider. Doc. 20 at 19-20; Ex. B. Defendant Hodgkins responded to this letter to clarify that the standard language regarding finality only referred to the fact that a complainant may not file an appeal with the Texas Supreme

Court, and also clarifying that the Board's disposition had no impact on whether a complainant could, or could not, file amended grievances. Ex. C. Specifically, the letter stated:

> In deciding classification appeals, the Board makes no determination as to whether a grievance may be amended. The Board's decision regarding classification is based on the record as forwarded by the CDC, and the finality of that decision has no bearing on whether a complainant may amend the grievance to present additional information and documentation. In fact, when a grievance is amended and resubmitted, the CDC assigns the amended grievance a new case number, and any appeals are then assigned a new case number by BODA.

The letter further referred Turnbull's counsel to CDC for questions regarding his ability to submit an amended grievance. Ex. C. Turnbull's counsel then responded again to Hodgkins acknowledging Hodgkins's response and indicating that he intended to file amended grievances. Ex. D.

Turnbull alleges that when he filed these amended grievances, they were not accepted by CDC, but he does not allege that Hodgkins had any involvement in this process. Doc. 20 at 20. And, by statute, she could not as Hodgkins does not have supervisory authority over CDC or its classification attorneys. Neither Hodgkins nor the Board received any additional information regarding this matter until Turnbull filed this suit. *See* TEX. R. DISCIPLINARY P. R. 2.12-.14, .1, Part VII; *see generally* Doc. 20 (lacking further factual allegations regarding Defendants Hodgkins).

## II.   HODGKINS'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(1)

### A.   Standard

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject matter jurisdiction as a defense to suit. FED. R. CIV. P. 12(b)(1). A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010

(5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* In ruling on a Rule 12(b)(1) motion, a court may consider one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of undisputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

**B.      Turnbull lacks standing to bring claims against Hodgkins**

For standing, there must be: (1) an injury that is concrete and actual or imminent, not hypothetical; (2) a fairly traceable causal link between the injury and the defendant's actions; and (3) the likelihood of redressability. *See Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009); *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 154 (Tex. 2012).

> **i.      Hodgkins cannot provide the relief Turnbull seeks in an injunction and therefore Turnbull cannot meet the redressability prong of standing**

Turnbull seeks a permanent injunction against Hodgkins "prohibiting [Hodgkins] from continuing to engage in ultra vires actions, without legal authority, including depriving Mr. Turnbull of his procedural due process rights by denying Mr. Turnbull of the right to amend his Second and Third Grievances or have his Amended Grievances be considered." Doc. 20 at 37. But as outlined above, Hodgkins lacks authority to grant or deny Turnbull the ability to amend any grievances or to have any grievances be considered or not be considered by CDC or BODA. Again, Hodgkins's role is purely ministerial—informing a complainant of BODA's decision. Hodgkins has no authority to act on a grievance—she provides purely administrative support to the members of BODA who opine on the substantive merits of an appeal of a grievance classification.

ii.    **Turnbull lacks standing to complain about the alleged failure to prosecute other attorneys**

Hodgkins has no role in choosing whether to prosecute any given attorney for professional misconduct, as outlined above. But even if she did, Turnbull would lack standing to bring claims regarding a state bar authority's decision to prosecute or not prosecute an alleged perpetrator under both the causation and redressability prongs of standing. "Supreme Court precedent makes clear that a citizen does not have standing to challenge the policies of the prosecuting authority unless she herself is prosecuted or threatened with prosecution." *Lefebure v. D'Aquilla*, 15 F.4th 650, 652 (5th Cir. 2021), cert. denied, 212 L. Ed. 2d 791, 142 S. Ct. 2732 (2022). Indeed, "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). Where a person brings claims based on an alleged failure to prosecute another, those claims must be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of standing. *See Lefebure*, 15 F.4th at 664.

Applying *Linda R.S.*, the Fifth Circuit has held that a person has no standing to pursue complaints about the prosecution of State Bar grievances against individuals other than himself. *Martinez v. State B. of Texas*, 797 F. App'x 167, 168 (5th Cir. 2020) (unpublished). In *Martinez*, a prisoner who filed a bar grievance against an attorney did not have "a cognizable interest in the procedures used to consider his bar grievance or in the ultimate outcome of the proceedings." *Id.* The court relied on *Linda R.S.* in holding that "a private citizen generally does not have a cognizable interest in the decision to prosecute a third party." *Id.* Similarly, Texas courts have declined to hold that a complainant in a disciplinary proceeding is a party with a cognizable interest in the outcome. *See Rosales v. Comm'n for Lawyer Discipline*, 2020 WL 1934815 at *3 n.3 (Tex. App.—Austin Apr. 22, 2020, no pet.).

Turnbull's claims all revolve around the Defendants' failure to prosecute his grievances against two other attorneys—Lovett and Trevino. In his Amended Complaint, Turnbull appears to argue that the letter communicating BODA's reversal of the dismissal of his initial grievances, a decision in his favor, somehow confers standing because it indicated that CDC would communicate with the parties regarding additional steps in the disciplinary process. (Doc. 20 at 16). But no cognizable legal interest is created in prosecutorial process merely because of an assurance of future communication that can only be provided by another party. Turnbull lacks standing to bring his claims.

**C.      Hodgkins is entitled to absolute and unqualified immunity based on her administrative role in the disciplinary process**

This Court further lacks jurisdiction because Hodgkins is entitled to absolute and unqualified immunity based on her administrative role in the disciplinary process. Under longstanding and binding precedent, officials who perform a judicial function within an attorney discipline system are entitled to absolute and unqualified immunity. Judges are absolutely immune from monetary liability "for all judicial acts that are not performed in the clear absence of jurisdiction, however erroneous the act and however evil the motive." *Johnson v. Kegans*, 870 F.2d 992, 995 (5th Cir. 1989), cert. denied, 492 U.S. 921, 109 S.Ct. 3250, 106 L.Ed.2d 596 (1989). This is so because of the "special nature" of a judge's responsibilities. *Id.* And, "[o]ther necessary participants in the judicial process are entitled to absolute quasi-judicial immunity." *Kirkendall v. Grambling & Mounce, Inc.*, 4 F.3d 989, 1993 WL 360732, at *3 (5th Cir. 1993) (citation omitted). This absolute quasi-judicial immunity "protects officials that perform functions comparable to those of judges[.]" *Da Vinci Inv., Ltd. P'ship v. Parker*, 622 Fed. Appx. 367, 373 (5th Cir. 2015)). In determining whether an official is entitled to absolute quasi-judicial immunity, courts must take a "functional approach"—looking to "the nature of the function performed, not the identity or title

of the actor who performed it." *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993). "Thus, where an official is entitled to absolute immunity, that immunity bars the court's jurisdiction as to claims against that official so that dismissal is warranted pursuant to Rule 12(b)(1)." *Villanueva v. United States*, 2020 WL 1234943, at *4 (W.D. Tex. Mar. 13, 2020); *Imbler v. Pachtman*, 424 U.S. 409, 419 n. 13 (1976)).

Officials who serve a judicial function within the attorney discipline system are entitled to such immunity. *Slavin v. Curry*, 574 F.2d 1256, 1266 (5th Cir. 1978) (grievance committee members entitled to absolute, judicial immunity), modified on other grounds on rehearing, 583 F.2d 779 (5th Cir. 1978); *Austin Mun. Sec., Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 757 F.2d 676, 690 (5th Cir. 1985). This is because bar committee members act as surrogates for judges, and merely serve for the convenience and efficiency of the judicial system. *Id*. Thus, committee members receive the same immunity judges would possess if they acted directly. *Id.*

Texas law also recognizes the necessity for this immunity for officials who perform such duties. TRDP Rule 17.09 provides absolute and unqualified immunity from suit to the Board of Disciplinary Appeals and its staff members for any conduct in the course of their official duties. *See also*, *Diddel v. Davis*, 2006 WL 8444647 (S.D. Tex. 2006) (noting the immunity afforded by Tex. R. Disciplinary P. R. 15.09 (since renumbered as Tex. R. Disciplinary P. R. 17.09) and that courts have read the grant of immunity afforded those involved in State Bar proceedings broadly due to the importance of the disciplinary process to the judiciary).

In addition, Hodgkins is entitled to absolute quasi-judicial immunity derived from her administrative role with BODA. The Fifth Circuit has extended such immunity, derived from judicial immunity, to court staff who are sued based on "acts they are specifically required to do

under court order or at a judge's discretion."[2] *Clay v. Allen*, 242 F.3d 679 (5th Cir. 2001). Court staff are also immune from suit when "they perform tasks integral to the judicial process." *Evans v. Suter*, 260 Fed. Appx. 726, 727 (5th Cir. 2007) (citing *Mullis v. United States Bankr. Court for Dist. of Nevada*, 828 F.2d 1385, 1390 (9th Cir. 1987)). "This protection is not limited to immunity from damages, but extends to actions for declaratory, injunctive, and other equitable relief." *Evans*, 2007 WL 1888308, at *3 (recognizing that "[i]t is well established that court officials—including clerks of court—enjoy absolute immunity from suits on claims arising out of the performance of judicial or quasi-judicial functions" and holding that because the court clerk enjoys absolute immunity, the court lacked jurisdiction).

Here, Turnbull's claims against Hodgkins are predicated on Hodgkins's communication of the Board's decisions on the Turnbull appeals—an administrative function she is required by rule to perform. BODA IPR 1.10(a) ("The BODA Clerk must give notice of all decisions…to the parties or their attorneys of record); 1.01(d) (defining "BODA Clerk" as "the executive director of BODA"). In particular, Turnbull focuses on language in the standard disposition letter sent to all complainants when the Board has affirmed CDC classification of grievance as an inquiry (i.e., finding that it does not state a cognizable claim for professional misconduct). The statement "the Board's decision is final" that forms the crux of Turnbull's claims against Hodgkins is included merely to communicate to complainants, who are often laypersons, that the Board's determination cannot be appealed. Indeed, Rule 7.11 of the TRDP provides, "Determinations by the Board of Disciplinary Appeals that a statement constitutes an Inquiry . . . are conclusive, and may not be

---

[2] As applicable to this case, Texas Supreme Court Order 96-9227 adopted amendments to the BODA IPR identifying the Executive Director of BODA as the clerk and providing that the clerk handle communications regarding cases on behalf of the Board. *Available at* https://www.txcourts.gov/All_Archived_Documents/SupremeCourt/AdministrativeOrders/miscdocket/96/96-9227.pdf.

appealed to the Supreme Court." The State Bar Act also recognizes that it is important for a respondent attorney to know when the dismissal of a grievance has become final. *See* TEX. GOV'T CODE § 81.072(o) (recognizing that when a grievance "dismissal has become final," the respondent attorney may deny that a grievance was pursued). Turnbull's counsel apparently mistook this language as somehow adjudicative of his client's right to file amended grievances, but Defendant Hodgkins quickly responded to his inquiry, stating that the language in the disposition letter was not intended to convey anything regarding the complainant's right to amend a grievance: "In deciding classification appeals, the Board makes no determination as to whether a grievance may be amended… and the finality of that decision has no bearing on whether a complainant may amend the grievance to present additional information and documentation." By definition, a "grievance" is a written statement "received by the Office of the Chief Disciplinary Counsel." TEX. RULES DISCIPLINARY P. R. 1.06(R). Thus, Hodgkins's letter referred Turnbull's counsel to CDC for specific inquiries regarding amending the grievances. In sum, Hodgkins acted under the direction of the three-person panel that adjudicated Turnbull's amended grievances and communicated the Board's decision to Turnbull in the regular course of her duties. She was acting at the Board's direction, and she performed tasks integral to the judicial process by communicating the disposition to the parties in accordance with the Board's procedural rules, adopted by the Texas Supreme Court. Turnbull's counsel's confusion—which Hodgkins quickly dispelled—provides no basis to strip her of absolute and unqualified immunity.

### D.      Hodgkins is entitled to Eleventh Amendment Immunity

The Eleventh Amendment of the United States Constitution bars suits in federal court against a state or one of its agencies by anyone other than the federal government or another state. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). That is, in general, the Eleventh Amendment leaves federal courts without jurisdiction to entertain suits directed against

states. *Green v. State Bar of Texas*, 27 F.3d 1083, 1087 (5th Cir. 1994). And a plaintiff may not circumvent the Eleventh Amendment by suing a state official in his or her official capacity because such a suit would pose a claim against the state treasury. *Id.*; *see also Pennhurst*, 465 U.S. at 101 (citing *Hawaii v. Gordon*, 373 U.S. 57, 58 (1963) (per curiam). The Board of Disciplinary Appeals is a judicial agency of the State of Texas, appointed by the Texas Supreme Court. TEX. R. DISCIPLINARY P. Part VII. Thus, to the extent that Turnbull asserts a claim for damages against Defendant Hodgkins in her official capacity, such claims are barred under the Eleventh Amendment.

Moreover, the *Ex parte Young* exception to Eleventh Amendment immunity, which allows private parties to bring "suits for injunctive or declaratory relief against individual state officials acting in violation of federal law," does not apply to Hodgkins. *Raj v. La. State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013); *see Ex parte Young*, 209 U.S. 123 (1908). But the Supreme Court has made clear that, for the *Ex parte Young* exception to apply, the state official, by virtue of his or her office, must have "some connection with the enforcement" of the challenged law. Here, however, Hodgkins has no connection with the enforcement of the Texas attorney disciplinary system, including prosecutorial discretion as to the type of proceeding following an investigation or how to classify a grievance. Therefore, the *Ex parte Young* exception does not apply to Hodgkins.

## III.   HODGKINS'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)

### A.   Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)

(quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

**B.     Turnbull has failed to state a claim because he fails to detail how Hodgkins was involved in the unlawful conduct he alleges in his Amended Complaint**

Defendant Hodgkins had no personal involvement in any of the acts for which Turnbull seeks damages.  Personal involvement is an essential aspect of a section 1983 cause of action. *See Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a rights cause of action."). The Fifth Circuit has held that a plaintiff must specify the personal involvement of each defendant in a section 1983 proceeding and "cannot make generalized allegations, nor can he support a claim based on any vicarious liability theory." *See Murphy v. Kellar*, 950 F.2d 290, 292 n.7 (5th Cir. 1992). In describing "personal involvement," the Supreme Court denoted that "there must be an affirmative link between the incident and some act by the defendant." *Rizzo v. Goode*, 423 U.S. 362, 363 (1976); *see also Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983) (explaining that a defendant "must be either personally involved in the acts causing the deprivation of a person's constitutional rights, or there must be a causal connection between an act of the [defendant] and the constitutional violation sought to be redressed").

As outlined above, Hodgkins simply performs an administrative duty in facilitating the operation of the Board and provides legal counsel to the Board. She is *not* a voting member of the Board, does not cast votes regarding the disposition of matters before the Board, and does not opine on the underlying substance of grievances. *See* TEX. RULES DISCIPLINARY P. R. 7.05. She simply "assume[s] all duties normally performed by the clerk of a court." BODA IPR 1.01(d).

The vast majority of Turnbull's claims concern the disposition of the Turnbull grievances. Defendants Hodgkins played no role in, nor had any knowledge of, the ultimate disposition of the initial Turnbull grievances, as such matters following the Board's reversal are confidential by rule. *See* TEX. RULES DISCIPLINARY P. R. 2.16. Indeed, the only involvement by the Board in the initial Turnbull grievances was to reverse CDC's initial classification determination and refer the matter back to CDC for further investigation—the result Turnbull sought. In this, Hodgkins played only the administrative role authorized by the governing rules: acceptance of the notice of appeal, processing of the classification appeal, and communication of the disposition reached by the three-member panel of the Board. BODA IPR 1.04(a), 1.05(a), 1.10(a). What happened after that, including the investigation and disposition of those grievances was, by rule, entirely outside the scope of Hodgkins's knowledge or control, and Turnbull does not allege otherwise. Similarly, Hodgkins does not direct CDC on which cases it seeks to take to trial, and which it presents to a summary disposition panel. *See* TEX. RULES DISCIPLINARY P. R. 2.12, 5.02. Indeed, in Turnbull's allegations listed under his claims for damages, no specific allegations are asserted as to Hodgkins or her conduct. Doc. 20 at 24-36.

With regard to the second Turnbull grievances, Hodgkins again performed her administrative role. She did not vote on the disposition of these grievances but facilitated the Board's consideration of the grievance in the normal course of Board duties, and then communicated the disposition to Turnbull. The correspondence that followed between Hodgkins and Turnbull's counsel here is the lone matter on which Hodgkins had any personal involvement. In his claim for injunctive relief, Turnbull claims his procedural due process rights were violated,

but he does not appear to assert any claims for damages. Doc. 20 at 24-36, 37. Even if he had, Turnbull's claims regarding this correspondence fail to state a claim under any theory.[3]

## C.    Turnbull fails to state an Equal Protection claim[4]

It is unclear if Turnbull asserts an equal protection claim against Hodgkins, as Turnbull's allegations of an equal-protection violation do not involve Hodgkins. While this claim largely focuses on how his grievance was prosecuted as compared to others within the attorney discipline system, none of these allegations assert that others were permitted to file amended grievances, but he was not. And as to the Board's decisions on Turnbull's grievances, the Board reversed the classification of the first set of grievances and affirmed the classification of the second set of grievances—hardly a basis for comparison as to cases involving other parties.

To establish an equal protection claim, a plaintiff must show that two or more classifications of similarly situated persons were treated differently. *See Stefanoff v. Hays County, Tex.*, 154 F.3d 523, 525–26 (5th Cir. 1998). However, Turnbull cannot bring an "Equal Protection claim on the ground that one person received a discretionary punishment and another did not, 'even if for no discernable or articulable reason.'" *Rountree v. Dyson*, 892 F.3d 681, 684 (5th Cir. 2018) (quoting *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 604 (2008)). This is because "[t]here are some forms of state action . . . which by their nature involve discretionary decision making based on a vast array of subjective, individualized assessments." *Id.* In those cases, "the rule that people

---

[3] It is unclear whether Turnbull alleges an ultra vires claim against Hodgkins. To the extent he does, it fails because Turnbull fails to detail "facts sufficient to establish that [Hodgkins] was acting without any authority whatever, or without any colorable basis for the exercise of authority." *Danos v. Jones*, 652 F.3d 577, 583 (5th Cir. 2011) (internal citation marks omitted).

[4] The equal-protection analysis under the federal Equal Protection Clause "applies to equal protection challenges under the Texas Constitution." *Bell v. Low Income Women*, 95 S.W.3d 253, 266 (Tex. 2002). Therefore, for the same reasons Turnbull fails to state an Equal Protection claim under 42. U.S.C. § 1983, he also fails to state an equal protection claim under the Texas Constitution.

should be 'treated alike, under like circumstances and conditions' is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted." *Id.* Nowhere does Turnbull allege any differential treatment by Hodgkins as compared to other similarly situated complainants, either as to the processing of Turnbull's classification appeals or as to amendment of grievances pursuant to Rule 2.10(A). This claim fails as a matter of law.

**D.      Turnbull fails to state a First Amendment claim**

As with his equal protection claims, Turnbull's First Amendment claim does not contain any specific allegations related to Defendant Hodgkins. Generally, he claims that he was deprived of his First Amendment right because his grievances were not resolved to his satisfaction. However, it is well-settled law that a government agency's refusal to consider or act upon grievances does not violate free speech principles. *E.g.*, *Smith v. Arkansas State Hwy. Emp., Loc. 1315*, 441 U.S. 463, 464–65 (1979).  "[T]he First Amendment does not impose any affirmative obligation on the government to listen, [or] to respond to" complainants before it.  *Id.* at 465.  More specifically, the Fifth Circuit has been clear that "the Constitution does not require the State to take any particular action in response" to a grievance filed with the State Bar. *Martinez*, 797 Fed. App'x at 168; s*ee also Brinson v. McKeeman*, 992 F. Supp. 897, 909 (W.D. Tex. 1997) (holding that there is no constitutional right to compel the State Bar of Texas to investigate a grievance). The First Amendment "provides no guarantee that a speech will persuade or that advocacy will be effective."  *Hanover Township Fed'n of Teachers v. Hanover Cmty. Sch. Corp.*, 457 F.2d 456, 461 (1972).  Thus, even if a specific claim had been articulated against Defendant Hodgkins, it would fail as a matter of law.

**E.**     **Turnbull's "due course of law" claim under the Texas Constitution fails**

Turnbull's due-course-of-law claims fail as a matter of law. When determining whether a governmental action violates the due course of law guarantee, the courts engage in a two-step inquiry. *Univ. of Tex. Med. School at Houston v. Than*, 901 S.W.2d 926, 929 (Tex. 1995). The court first determines if the plaintiff has an enumerated interest that is entitled to protection; if so, the court then determines whether the governmental agency followed due course of law in depriving the plaintiff of that interest. *Id.*

Turnbull's allegations under this claim appear to center on his demand for the reasoning behind CDC's referral of his grievances to the summary disposition panel and not an investigatory hearing. But he does not have an enumerated interest in this information. Indeed, Texas courts have rejected the notion that section 81.072(b)(2) of the State Bar Act somehow requires CDC to disclose its reasoning for electing to refer a grievance to a summary disposition panel. *See* TEX. GOV'T CODE § 81.072(b)(2); *e.g.*, *Doe v. Bd. of Directors of State Bar of Tex.*, 2015 WL 6656216, at *4 (Tex. App.—Austin Oct. 27, 2015, pet. denied). This claim fails as a matter of law.

Though not explicitly asserted under his due-course-of-law claim, Turnbull's Amended Complaint appears to assert a due process claim against Hodgkins, alleging that, along with Defendant Martinez (CDC classification attorney), she deprived Turnbull of his procedural due process rights by denying Turnbull of the right to amend his Second and Third Grievances or have his amended grievances considered. Doc. 20 at 37. As noted throughout, a complainant does not have "a cognizable interest in the procedures used to consider his bar grievance or in the ultimate outcome of the proceedings." *Martinez*, 797 F. App'x at 168. Without a cognizable interest, Turnbull cannot assert a due process violation. Nevertheless, Turnbull focuses not on the rules' lack of a rehearing or appeal process for classification appeals decided by BODA, but instead on his disagreement with CDC's determination that the subsequent grievances fell within the scope

of his previously submitted grievances and thus did not qualify for further amendment under Rule 2.10(A). Even if a claim could be asserted on these facts, Defendant Hodgkins was in no way involved in this determination, and explicitly informed Turnbull's counsel that the Board's disposition had no effect on whether he could (or could not) amend his grievances. Ex. C. Thus, Turnbull's due course of law claims fail as a matter of law.[5]

## F.     Turnbull's "open courts" claim must fail

Turnbull's open courts claim also fails. The open courts provision of Section 13 "includes at least three separate constitutional guarantees:  1) courts must actually be operating and available; 2) the Legislature cannot impede access to the courts through unreasonable financial barriers, and 3) meaningful remedies must be afforded." *CenterPoint Energy Res. Corp. v. Ramirez*, 640 S.W.3d 205, 220 (Tex. 2022). The third guarantee precludes the Legislature from "abrogat[ing] the right to assert a well-established common law cause of action unless the reason for [the Legislature's] action outweighs the litigants' constitutional right of redress." *Id.* Stated differently, an open-courts challenge must show that (1) "the litigant has a cognizable common law cause of action that is being restricted," and (2) "the restriction is unreasonable or arbitrary when balanced against the purpose and basis of the statute." *Trinity River Auth. v. URS Consultants, Inc.-Tex.*, 889 S.W.2d 259, 262 (Tex. 1994). But a constitutional attack that is not premised upon restriction of a common-law cause of action necessarily fails the first prong of the open courts test. *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 357 (Tex. 1990).

Here, the grievance procedures in Texas are not premised on a common law right, but on the State Bar Act (TEX. GOV'T CODE Chapter 81), the TRDP, and as related to BODA, the BODA

---

[5] Turnbull's claims against Hodgkins for violations of the Texas Constitution also fail, of course, because of Hodgkins's Eleventh Amendment immunity, and the fact *Ex parte Young* only applies for alleged violations of federal law. *Raj*, 714 F.3d at 328.

IPR. None of these provisions are rooted in the common law. Moreover, Hodgkins explicitly clarified in her correspondence with Turnbull's counsel that the Board's disposition of the second Turnbull grievances had no bearing on whether such grievances could be amended. Thus, even if an open courts claim could be asserted, Hodgkins had no involvement in any action regarding Turnbull's attempt to amend his grievances.

**G.     Hodgkins has qualified immunity for all claims against her in her individual capacity**

Even if Turnbull had alleged a cognizable constitutional violation by Hodgkins, which he has not, she is nonetheless entitled to qualified immunity because her actions were not contrary to any clearly established law. Qualified immunity must be determined "at the earliest possible stage of the litigation." *Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021) (per curiam). That is because qualified immunity is more than "a mere defense to liability." *Pearson v. Callahan*, 555 U.S. 223, 237, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (quotation omitted). It is also "an immunity from suit." *Id.* (quotation omitted). And one of the most important benefits of the qualified immunity defense is "protection from pretrial discovery, which is costly, time-consuming, and intrusive." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012); *see also Helton v. Clements*, 787 F.2d 1016, 1017 (5th Cir. 1986) (per curiam) (a "refusal to rule on a claim of immunity" deprives a defendant of his "entitlement under immunity doctrine to be free from suit and the burden of avoidable pretrial matters"). Where the pleadings are insufficient to overcome qualified immunity, the district court must grant the motion to dismiss without the benefit of pre-dismissal discovery. *Carswell v. Camp*, 54 F.4th 307, 312 (5th Cir. 2022).

To demonstrate the inapplicability of qualified immunity, plaintiffs must allege (1) the violation of a federal constitutional or statutory right; and (2) that the right was clearly established at the time. *Id.* This Court "may tackle these questions in whatever order it deems most expeditious." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). A case "directly on

point" is not required, but "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). In other words, "there must be adequate authority at a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitively unlawful." *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015).

Turnbull's allegations are insufficient on both prongs. Simply put, no Fifth Circuit case law supports the notion that the text of the disposition letter sent by Defendants Hodgkins violated any clearly established law in the Fifth Circuit. Indeed, the Fifth Circuit has explicitly held that a complainant has no cognizable interest in the procedures used to consider his bar grievance or in the ultimate outcome of the proceedings, and has long recognized that officials who oversee state disciplinary matters are entitled to absolute immunity. *Martinez*, 797 F. App'x at 168 (5th Cir. 2020). The TRDP leave no question that Defendant Hodgkins is entitled to absolute immunity from "all actions at law or inequity." TEX. GOV'T CODE § 81.072; TEX. RULES DISCIPLINARY P. R. 17.09. Turnbull can point to no clearly established law that any action taken by Defendants Hodgkins was unlawful. As such, Turnbull's claims for damages must be dismissed for this independent reason.

## PRAYER

Defendant Jenny Hodgkins respectfully requests the Court grant in all respects the motion to dismiss and for such other relief, at law and in equity, to which she is justly entitled.

Respectfully Submitted,

Dated: June 20, 2023

_/s/ Daniel J. Olds_
**DAVID N. KITNER**
State Bar No. 11541500
dkitner@clarkhill.com
**JADD F. MASSO**
State Bar No. 24041411
jmasso@clarkhill.com
**DANIEL J. OLDS**
State Bar No. 24088152
dolds@clarkhill.com
**CLARK HILL PLC**
901 Main Street, Suite 6000
Dallas, Texas 75202
Telephone:  (214) 651-4300
Fax:  (214) 651-4330

**ATTORNEYS FOR JENNY HODGKINS**

### CERTIFICATE OF SERVICE

I hereby certify that on June 20, 2023, a true and correct copy of the foregoing was served

via the Court's ECF filing system on all counsel of record.

By: _/s/ Daniel J. Olds_
Daniel Olds